Argued May 2, affirmed September 9, petition for
rehearing denied October 11, 1966

# STATE OF OREGON *v.* JAMES FRED WALKER

**417 P. 2d 1004**

*Charles R. Cater,* La Grande, argued the cause and filed a brief for appellant.

*Arthur R. Barrows,* Deputy District Attorney, Pendleton, argued the cause for respondent. With him on the brief was Richard J. Courson, District Attorney, Pendleton.

Before McAllister, Chief Justice, and Perry, Sloan, Goodwin, Denecke, Holman and Lusk, Justices.

PERRY, J.

The defendant James Fred Walker was convicted of the crime of burglary not in a dwelling house and appeals.

The facts, in general, are that Miller and Walter Rayborn, brothers, were potato growers in Umatilla County and maintained a potato cellar near Weston, Oregon, where potatoes were stored. The brothers had counted the sacks of potatoes in the cellar on January 28, 1965. On January 30 they counted the sacks and noted that 71 one hundred pound sacks of potatoes were missing. The potatoes were traced to the defendant and he testified he purchased them from a

man who called himself Raymond Campbell, who could not be located.

There was no evidence of how entry was made into the potato cellar. There were no openings of sufficient size in the cellar, except swinging front doors which were closed and locked, and there was no evidence that the lock had been picked.

The defendant contends reversible error was committed because the state and the prosecuting witness refused to furnish him with the names and addresses of itinerate workers who had been working for the brothers during the two years prior to the burglary.

After the defendant's arrest, and prior to the trial, the defendant with his attorney called upon Mr. Miller Rayborn and requested the names of the workers. According to the record the following occurred:

"Q You recall we asked you for the names of the employees who had worked there picking up potatoes?

"A Yes, sir.

"Q Do you recall that you refused to give us those names?

"A I didn't give them to you, no.

"Q You recall that you telephoned the District Attorney and asked him if you could?

"A Yes, I did. You asked me to. You said you had already talked to him.

"Q And did you follow his advice—(Interrupted)

"A Yes, sir.

"Q —in refusing to give us those names?

"A He said I may do as I please about it, but I didn't have to answer any questions outside of here.

"Q You didn't give us these names?

"A No.

"Q You refused?

"A I told you I would give them to you here, if you wanted, but I wasn't going to give them to you out there."

Subsequently, and prior to trial, the defendant made a written demand upon the state for inspection and copying of a list of these persons prior to trial. This demand was refused as not a proper demand.

However, prior to the making of the written demand upon the state, the defendant filed in the trial court a motion in part as follows:

"The defendant further demands of the District Attorney for Umatilla County, Oregon, that the prosecution give to the defendant a list of the employees who had been employed by the said Miller Rayborn who was alleged to have been the owner of the potato cellar referred to in the indictment, which persons were employed by the said Miller Rayborn during the two years preceding the alleged burglary.

"The defendant also demands of the District Attorney for Umatilla County, Oregon, that the addresses of said persons who were employed by the said Miller Rayborn be given to the defendant.

"In presenting these demands, the defendant relies upon the following facts and propositions:

"1. It was testified by the State's witnesses at the preliminary hearing that the potato cellar was locked with a padlock; that the padlock had evidently been opened with a key; that it had not been broken open by force and Mr. Miller Rayborn, the owner of the potato cellar in question, testified that he had kept a key concealed on the premises near the door on which said padlock was located. Inspection of the padlock itself is requested and demanded so that an expert selected by the defendant can determine whether or not it was or

was not opened by force or was or was not opened with a key.

"2. The names of the employees of Miller Rayborn and their addresses are necessary in order that the defendant may be enabled to investigate those persons and find out if any of them knew the location of the key that unlocked the padlock on the potato cellar, and, further, if any of them is the person or persons who sold the potatoes to the defendant which he is alleged to have intended to steal in the potato cellar. In this connection, the testimony at the preliminary hearing established that the prosecuting witness, Miller Rayborn, had hired a number of various kinds of people to do work for him in connection with his potato growing operation, and it appears likely that some or all of those people might have known where Mr. Rayborn concealed the key that fit the padlock on the potato cellar."

Subsequently, and before the matter could be heard by the trial court, the defendant moved to withdraw this motion, which was granted.

To justify defendant's position, he relies upon the federal cases *Brady v. Maryland,* 373 US 83, 83 S Ct 1194, 10 L ed2d 215, and *Jencks v. United States,* 353 US 657, 77 S Ct 1007, 1 L ed2d 1103. These cases do not deal with the question here presented. *Jencks* deals with the right to inspect documents in the government's possession. *Brady* deals with the suppression of evidence known to the government to be favorable to the defendant. Here there is nothing to indicate in the slightest that those who had previously worked for the complaining witness knew anything that would be material or relevant in the trial of this case.

Also, in this case it should be noted that the defendant was granted a preliminary hearing. If the

names and addresses of those who worked for the Rayborns was thought by the defendant to be important- this information could have been obtained at that time.

■■ While it is as much the duty of the state to prevent the conviction of the innocent as it is to successfully prosecute the guilty, and the giving of the names would have shown a more cooperative spirit in carrying out the purpose of criminal prosecutions, no error was committed.

It should also be noted that the defendant did not press his demands at the trial. It appears to us that had he believed the names were material he would have insisted upon their production at the trial, and then, if it were made to appear they were material, requested a continuance.

■ The defendant also made the same demand with respect to the lock on the door. The lock was introduced into evidence, and the testimony of both the state and defendant's witness being to the same effect, the defendant was in nowise prejudiced.

The defendant also assigns as error the failure of the trial court to direct the jury to return a verdict of not guilty.

The defendant argues that since the state was unable to prove how the building was entered there is no proof of an unlawful entry, and the lack of proof of an unlawful entry demands an acquittal of the crime of burglary.

■■ Circumstantial evidence alone is sufficient to establish any necessary element of a crime, *State of Oregon v. Watts,* 208 Or 407, 410, 301 P2d 1035, and, therefore, entry, like any other element of the corpus delicti of the crime of burglary, need not be proven by

direct evidence, but may be established by circumstantial evidence.

In this case, in addition to proof of the defendant's possession of the stolen property, the state's evidence disclosed that the sacks of potatoes had been wheeled to the door on a rubber-tired truck kept in the cellar; that a dual-tired truck had left tracks near the entrance to the place where the potatoes were stored and that these tire tracks were of a design that would be made by tires found on defendant's truck.

There was also testimony that defendant had told one witness he was going to Walla Walla on January 28th "to pick up spuds"; another, that he had grown them at home; another, that he had grown them at La Grande and stored them in a cellar; and another, that he had paid for the potatoes in cash and had written a check on his bank account for that purpose, although a bank official testified he had not.

Also, the evidence disclosed that, although the defendant said he paid cash for the potatoes, he had not taken a receipt from the undiscoverable seller.

■ From all of these circumstances a jury could reasonably reach the conclusion beyond a reasonable doubt that the defendant had gained access to the cellar by some undiscovered means.

■ The defendant also assigns as error the trial court's refusal to instruct the jury to the effect that evidence of defendant's motive or lack of motive to commit the crime was an important issue to be considered by the jury.

The defendant's requested instruction was erroneous in that it constituted a comment upon the evidence.

■ Motive is but a cause or reason that moves the

will and induces action, *Commonwealth v. Trunk*, 311 Pa 555, 167 A 333, an inducement which leads to or tempts the mind to commit an act, *People v. Lewis*, 275 NY 33, 9 NE2d 765.

 Motive is not a requisite element of the crime of burglary and it is only when the state attempts to prove motive to bolster its case that an instruction would be at all proper. There is no evidence offered in this case by the state to establish the defendant's motive to commit the crime charged. But even if the state had offered such evidence, then motive is but a circumstance to be considered with other evidence surrounding the commission of the crime and to be given only such weight as the jury deems proper. *People v. Garcia*, 2 Cal2d 673, 42 P2d 1013.

There was no error in refusing to give the requested instruction.

The defendant also contends that the trial court erred in failing to grant his motion for a new trial on the basis of newly discovered evidence.

The newly discovered evidence consists of an affidavit by a Mr. Greenwood. Greenwood was a friend of Bertrand Wardell, and Wardell was working on his automobile in a quonset hut at the same time defendant was working on his truck. The affidavit of Greenwood states that at some time late in the month of January, 1965, he dropped by the quonset hut to visit his friend Wardell; that Wardell was not there, but he saw a large truck that was wet backed in against the rear of defendant's truck, which was dry, and two men were transferring what looked like sacks of potatoes from the backed-in truck to defendant's truck.

 Motions for a new trial on the ground of newly discovered evidence "are not favored; to the contrary

they are viewed with distrust." *Lewis v. Nichols,* 164 Or 555, 570, 103 P2d 284.

■ There is also a presumption that if due diligence had been exercised the evidence could and would have been discovered before trial. *N.W. Ice & Cold Stor. v. Multnomah Co.,* 228 Or 507, 365 P2d 876; *Lewis v. Nichols,* supra.

> The defendant by affidavit stated:
>
> "* * * I did not know that Mr. Greenwood or any other person had observed the transfer. I did not know Mr. Greenwood by that name prior to the information given me by Mr. Cater. I had seen from time to time several persons casually wandering into the quonset hut while I was working there but did not know who they were, and I did not know that any of them was a friend or acquaintance of Mr. Bert Wardell, who was also working on his automobile in the garage."

Mr. Wardell, who was called as a witness for defendant, stated in his affidavit:

> "* * * Mr. Greenwood dropped in on me sometimes while I was working on my automobile in the Bronson garage, but I don't believe that he and Mr. Walker were acquainted and I am reasonably sure that Mr. Walker did not know Mr. Greenwood's name or where he lived."

■ It is quite evident from the above that defendant was well aware of the fact that from time to time people dropped into the quonset hut where the defendant and Wardell were working. While it may be true that defendant did not know that any of those who dropped in were friends of Wardell, it is quite certain that had inquiry been made of Wardell as to who did occasionally stop at the quonset hut the name of Greenwood would have been mentioned. It does not

appear to us that any real diligence was used in this matter.

The defendant also contends there was misconduct in the fact that one of the witnesses, while in the audience, made a disparaging remark concerning testimony of a witness for the defendant that must have been overheard by one of the jurors while in the jury box.

The statement is denied by the witness charged with the misconduct. The trial judge was not impressed with the charge made, nor are we.

The judgment of conviction is affirmed.