Argued March 18, affirmed May 7, 1970

# STATE OF OREGON, *Respondent, v.*
# CHARLES AUTRY WILLIAMS, *Appellant.*

468 P2d 909

Thomas D. Kerrigan, Portland, argued the cause and filed the brief for appellant.

John W. Osburn, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Lee Johnson, Attorney General, and Jacob B. Tanzer, Solicitor General, Salem.

Before SCHWAB, Chief Judge, and LANGTRY and FOLEY, Judges.

FOLEY, J.

Defendant was convicted of the July 20, 1966, first degree murder of Al Weinstein, proprietor of Walnut Park Furniture Store in Portland. Weinstein was seen alive in and around his store at and after 9 a.m. At 10 a.m. he was found dead in his burning store. He had been bludgeoned on the head and died from these wounds, although death may have been hastened by heat and carbon monoxide from the fire.

Two of the witnesses linking defendant with the crime were convicts, Marvin Raines and Daniel Reed. Raines testified that defendant and one Talley, both of whom he knew, had flagged him down as he was driving along the street on the morning of the murder and asked him to drive them to Weinstein's furniture store. For $1 he drove them to the store and waited on the corner while they went in. The witness stated that as he looked in the store he saw Weinstein, defendant and Talley, and later when he looked in he saw defendant and Talley, but not Weinstein. When defendant and

Talley came out defendant looked "kind of sick," and had blood on his hand. Raines quoted Talley as saying to defendant, "What did you do that for?" The witness Raines stated he then drove them north on Union Avenue to Jarrett Avenue where they got out of the car. The other convict, Daniel Reed, testified that about the middle of August 1966 he had a conversation with defendant about the Weinstein death. He stated that defendant told him that he and Talley were in the process of stealing from Weinstein in his store when Weinstein yelled and defendant hit Weinstein and knocked him down. Witness said they then started a fire with something in the store.

Another witness, Dennis Smith, a part-time employe of deceased Weinstein, who was across the street from the furniture store, saw the witness Raines, whom he knew, standing on the corner and two people standing in the doorway of the store. From a photograph which was handed him, he identified one of the two as the defendant. Smith left the scene to get his car and when he returned a few minutes later the fire trucks were at the store and the defendant and the other persons were gone.

Defendant testified that he did not kill Weinstein. He denied being with Raines on the morning of the fire and denied the conversation with Reed. Other witnesses supported defendant's testimony.

After the jury had been instructed and had retired, but before they had returned their verdict, the Multnomah County District Attorney's office advised the court and counsel that one Wilbert Polk, an inmate of Oregon State Correctional Institution, had advised them that witnesses Raines and Reed had conspired with Polk to falsely implicate defendant in the murder of Weinstein. Subsequent to trial and before judgment

was entered, statements were taken on July 12, 1968, from Polk, Marvin Raines and Daniel Reed. The judgment sentencing defendant to life imprisonment is dated July 23, 1968. Thereafter, in the motion for a new trial, the three statements were made a part of the affidavit in support thereof. In their statements both Raines and Reed swore that there was no conspiracy to "frame" the defendant and that they told nothing but the truth at the trial. A hearing on the motion for new trial was held by the trial court and testimony presented, including the testimony of Wilbert Polk. His testimony is to the effect that he was present in a cell at Rocky Butte when he, Polk, Raines and Reed discussed blaming the Weinstein killing on Dennis Smith and then later on defendant Williams. The testimony indicates a discussion about blaming Williams, and is somewhat vague as to any particular agreement that they would in fact testify falsely to effect that result. At this hearing on the motion for new trial, Polk also swore that he had previously lied while under oath "maybe four times."

ORS 17.610 provides in part:

> "A former judgment may be set aside and a new trial granted on the motion of the party aggrieved for any of the following causes materially affecting the substantial rights of such party:
>
> "* * * * *
>
> "(4) Newly discovered evidence, material for the party making the application, which he could not with reasonable diligence have discovered and produced at the trial."

ORS 136.850 makes the above applicable to criminal actions.

■ Applications for new trial based on newly discovered evidence are viewed with distrust and con-

strued with great strictness. *State v. Walker*, 244 Or 404, 417 P2d 1004 (1966); *State v. Davis*, 192 Or 575, 235 P2d 761 (1951). Such motions are addressed to the sound discretion of the trial court.

■ Newly discovered evidence which will justify a new trial:

(1) must be such as will probably change the result if a new trial is granted;

(2) must have been discovered since the trial;

(3) must be such as could not have been discovered before the trial by the exercise of due diligence;

(4) must be material to the issue;

(5) must not be merely cumulative of former evidence;

(6) must not be merely impeaching or contradicting of former evidence.

*State v. Ellis*, 232 Or 70, 374 P2d 461 (1962); *Newbern v. Exley Produce Express*, 208 Or 622, 303 P2d 231 (1956); *State v. Davis*, supra.

■ The trial court found that requirements (2) (discovered since trial), (3) (unable with diligence to discover before trial) and (4) (material to the issue) were met. As to requirement (1) the trial court said:

> "Item (1), would it probably have changed the result. I have some question in my mind about that. I think under the recent decisions, however, particularly, I think it's the Chapman case, we would have to presume that it might well have changed the results. At least, I don't think I could make a finding beyond that that it wouldn't have changed the results. I would not so find.",

and later, "As to conditions one, two, three, four, I would certainly say that I couldn't say beyond a reasonable doubt that it wouldn't change the result." It is

not clear what the trial court found. His failure to make a clear finding as to requirement (1) may be accounted for by his knowledge that he was about to determine that requirements (5) (not cumulative) and (6) (not merely impeaching or contradictory of former testimony) were not met. He made these findings beyond a reasonable doubt: "* * * conditions five and six are not met."

Defendant urges that the testimony of the witness Polk "goes far beyond impeachment, it actually sets forth facts constituting a conspiracy and also perjury." It is true that if the testimony of the witness Polk established a conspiracy to commit perjury it would completely negate the testimony of Raines and Reed in which case there would likely be insufficient evidence to convict the defendant and requirement (1) (probably change the result) would be met. However the testimony of Polk, when considered in its totality, merely says that the parties talked about blaming the Weinstein killing on the defendant. Besides, as previously mentioned, the testimony of the witness Polk was rendered almost incredible when he testified under oath that he had previously perjured himself in trials in court four times.

In applying the requirements for allowance of a new trial, it seems most reasonable to consider them as only three separate requirements. Any application for new trial must meet the first three requirements: (1) (probably change the result), (2) (discovered since trial) and (3) (could not have been discovered before the trial by due diligence). *State v. Truxall,* 2 Or App 214, 467 P2d 643 (1970). Requirements (4) (material to the issue), (5) (not cumulative) and (6) (not merely impeaching or contradictory of

former evidence) should only be considered part of requirement (1). If the answer to requirement (1) is affirmative, requirements (4), (5) and (6) should not prevent the granting of a new trial, for to do otherwise would be letting procedure and form trample over merit and substance.

In this case, we find the vague and indefinite newly discovered evidence of the self-styled perjurer Polk would not probably change the result of the trial and therefore fails to meet requirement (1). See also *State v. Oland*, 1 Or App 272, 461 P2d 277 (1969). Thus we affirm the trial court, but for a different reason.

Affirmed.