Argued March 17, affirmed July 9, petition for rehearing denied
July 29, petition for review denied September 22, 1970

# STATE OF OREGON, *Respondent, v.*
# CURTIS CHARLES SIMMS,
## *Appellant.*

471 P2d 821

*Ralph C. Sipprell* and *Millard M. Becker*, Portland, argued the cause and filed the briefs for appellant.

*John W. Osburn*, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Jacob B. Tanzer, Solicitor General, and Lee Johnson, Attorney General, Salem.

Before SCHWAB, Chief Judge, and FORT and BRANCHFIELD, Judges.

## BRANCHFIELD, J.

Defendant was indicted and tried on a charge of first degree felony murder. The jury found him guilty of manslaughter and he appeals. He charges that the trial court erred when it denied his motion for a new trial. That motion was based upon a claim of newly-discovered evidence, and the alleged suppression by the state of evidence favorable to the defendant.

On April 2, 1968, defendant was driving his automobile around Portland. Also in the car were a 12-year-old boy and two juvenile girls. About 5:30 p.m. the 12-year-old boy left the car and snatched a purse from an elderly woman, Mrs. Marie Brandon, who was walking home from the Fred Meyer store on Union Avenue. The boy re-entered the car which defendant then drove to the Big C store. The boy and one of the girls left the car and entered the store. Shortly afterwards they came out. When a woman, later identified as Mrs. Alice Vannet, came from the store, the boy and girl re-entered the car, and the boy told defendant to follow the woman. When Mrs. Vannet reached her home, the 12-year-old boy and the girl again left the car, which waited for them with its motor running, and went up to the porch of the Vannet home. The boy and girl took Mrs. Vannet's purse with such force that Mrs. Vannet fell from the porch. In falling, she struck her head on concrete, which caused her death. The boy and girl then re-entered the car which promptly left the scene. There was currency amounting to $23 in the purse, which the boy divided among the four people in the car. In convicting defendant, the jury necessarily found that he knew of the theft from Mrs. Brandon and of the intention of the boy and girl to take Mrs. Vannet's purse. Defendant denied knowledge of any intent to steal purses and contested other of the above facts. However, there was evidence in support of all the facts recited.

At the hearing on his motion for a new trial, the defendant made three contentions: First, that the 12-year-old boy had testified falsely concerning the theft of Mrs. Brandon's purse. Secondly, the defendant contended that the state concealed a police report on the Brandon incident. Finally, he contended that the

156

state wilfully suppressed an oral statement made by Mrs. Brandon to the deputy district attorney that the 12-year-old boy was not her assailant.

■■ Applications for a new trial based on newly-discovered evidence are viewed with disfavor and are strictly construed. The requirements which must be met before the trial court will allow a new trial are set out in *State v. Truxall*, 2 Or App 214, 467 P2d 646 (1970), and in *State v. Williams*, 2 Or App 367, 468 P2d 909 (1970), and need not be repeated here. The newly-discovered evidence which defendant claimed entitled him to a new trial consists of a statement taken from the 12-year-old boy after the trial in which he said he had testified falsely concerning the Brandon purse-snatch. The state countered by introducing a still-later written statement in which the boy swore that his trial testimony was true and correct in all details. The boy's testimony throughout is shrouded in self-contradiction. It is apparent, as the trial court found, that the boy was quite capable of changing his story every time he told it. The statement obtained by the defendant is not the kind of evidence that would "probably change the result" if a new trial were granted. It was merely impeaching and contradictory of other evidence and was patently untrustworthy. See *State v. Williams, supra,* and *State v. Johnson*, 250 Or 599, 444 P2d 10 (1968).

■ Defendant's post-trial claims with regard to the testimony of Mrs. Brandon and her alleged statement to the district attorney are based upon his lack of knowledge concerning what Mrs. Brandon had said prior to trial. Examination of her report to the police, her testimony and her post-trial statement conclusively demonstrate that she could not identify her assailant other than that he was a young Negro. Defendant had

an opportunity to and did cross-examine her. She was not asked at the trial to describe the boy who stole her purse, nor was she asked whether she had ever discussed the case with the deputy district attorney or any other representatives of the state of Oregon. Both of defendant's attorneys are experienced trial lawyers. We can only speculate as to their tactical reason for failing to cross-examine Mrs. Brandon more extensively. Whatever the reason, it is apparent that the tactic was deliberately adopted. It was not error on the part of the attorneys to use their best judgment in determining the manner of cross-examination, nor was it error for the trial judge to deny them another trial in order to afford them an opportunity to follow a different course.

Entwined with his claim of newly-discovered evidence, defendant says that the state suppressed evidence favorable to him. This claim is based upon the failure of the state to produce the police report of the Brandon purse-snatch and upon the statement taken from Mrs. Brandon after the trial, in which her description of the person who took her purse varied from the appearance of the 12-year-old boy who admitted taking it.

Defendant's motion for a new trial was supported by the affidavit of one of his attorneys. That affidavit recited the defendant's version of the theft of the purse from Mrs. Brandon; it denied knowledge by the defendant of either of the purse thefts until after the 12-year-old boy returned to the car with Mrs. Vannet's purse; it claimed that the Portland Police Department denied having a record of the theft of the Brandon purse; and it alleged that the deputy district attorney who tried the case had been told by Mrs. Brandon that the 12-year-old boy who testified

in this case could not be the person who stole her purse. Defendant claims that the state of Oregon thus had in its possession evidence vital to the defendant and material to his case, and that the prosecution, with knowledge of the material and crucial nature of this evidence, did not disclose it to the defense.

■ Defendant claims the suppression of the police report and the failure by the deputy district attorney to inform him of Mrs. Brandon's statement that the boy who testified in this case could not have stolen her purse amount to a violation of defendant's constitutional right to due process.

Our review of the constitutional question presented by the defendant is made difficult by two factors. One of these is the intermingling by defendant of two different theories upon which he based his claim for a new trial, with a shift in emphasis from "newly-discovered evidence" to "unconstitutional suppression of evidence" between the time the matter was argued in the trial court and briefed in this court. The other complication arises from a memorandum filed in the trial court by the state wherein the truthfulness and accuracy of the supporting affidavit of defendant's counsel was admitted for the purpose of the motion for a new trial.

There was no dispute that Mrs. Brandon's purse was stolen by a boy at the time and place reported to the police, and in the area where the 12-year-old boy witness admitted taking a purse from an "old woman." Thus the question is presented whether the deputy district attorney should have attached enough importance to the statement Mrs. Brandon allegedly gave him while waiting to testify that he should have informed defendant's counsel.

Mrs. Brandon's post-trial statement was made a

part of the record in this case at the request of the defendant. It demonstrates the very limited opportunity which Mrs. Brandon had to observe and identify her assailant.[1] It was in response to a leading question that Mrs. Brandon stated that she had told the prosecutor the boy in question could not have been her assailant.[2] In response to a question as to whether she had later seen anyone resembling the boy who took her purse, Mrs. Brandon said:

"Yes, I thought I did, but I'm not sure, since I haven't seen their face. They all look alike to me."

A copy of the police report on the Brandon purse theft was also made a part of the record at the time of the

[1] "[Mrs. Brandon] A  Yes. I was walking up, and all of a sudden I felt somebody grab my arm and yank down on it, and I tried to turn, but I could not see a sole. [sic] It was a Negro, but I could not see his face, because my plastic cap was over my glasses, and it had rained a little bit on the glasses besides. And so he couldn't get it off, the strap wouldn't break, so he pulled it over my arm real hard, and I lost my balance because I was trying to hang onto my groceries, and they fell off into the flowerbed, and I went down also, and I skinned my knee on the sidewalk.

"Q  Go ahead, what happened then?
"A  Then I tried to get up. I was hurt, and I tried to get up. And I lost one shoe on my right foot. And I ran after this boy. He turned around at the corner of 9th, and went up on the right-hand side, up towards Killingsworth, but he was walking. And he was carrying my purse in his right hand. And I called to him and asked him, I says, 'Please give me my purse.' And he started to run, and he run up on the lawn and in between the houses and disappeared.

"Q  All right. Now, when you fell down and lost your shoe, did you get up and follow him before he went around the corner, or had he already gone around the corner?
"A  No, he had already gone around the corner, but I knew which way he went, so I went after him."

[2] "Q  You told Mr. Richardson, [the prosecutor] though, that the boy he described couldn't be the one that took your purse, is that right?
"A  Yes, sir, I did.

motion for a new trial. It contains the following language:

"Mrs. Brandon states she probably would not be able to recognize the subj. due to the fact it happened so fast she was unable to get a good look at the susp. ."

Defendant has cited a number of federal cases to support his thesis that he has been deprived of his constitutional right to due process because of the suppression of evidence by the state. In *Brady v. Maryland*, 373 US 83, 83 S Ct 1194, 10 L Ed 2d 215 (1963), defendant's attorneys requested copies of prior written statements made by a codefendant. The prosecution disclosed a number of such statements but withheld one in which the codefendant admitted the actual homicide. It was held to be a violation of due process for the prosecution to fail to disclose that statement on request. The Supreme Court said (373 US 87):

"We now hold that the suppression by the prosecution of evidence favorable to an accused *upon request* violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or the bad faith of the prosecution." (Emphasis supplied.)

*United States ex rel Almeida v. Baldi*, 195 F2d 815, 820, 33 ALR2d 1407 (3d Cir 1951), involved a prosecution for murder of a police officer. One of the police officers discovered near the body of the deceased a blood-stained .38 bullet, although the defendant was armed with a .45 automatic. The officer was told by the prosecuting attorney not to mention the blood-stained

---

"Q   How did he describe this boy to you?
"A   Well, he didn't describe him very much, except to say that he was a little boy."

bullet on the witness stand. This led to the impression that the defendant's bullet had killed the officer although the prosecution knew that was not true.

Defendant has cited several cases where convictions were upset because the prosecutor knowingly permitted the use of perjured evidence in convicting an accused. These cases are not applicable here, where there is no claim of perjured testimony.

At the time of the hearing on the motion for a new trial, the prosecutor said:

"I have admitted the truth of Mr. Sipprell's affidavits for the purpose of this memorandum only. Otherwise, it is denied. I can assure Mr. Becker or Mr. Sipprell or Mr. Simms that at such time as he chooses to put this matter at issue as to whether the state willingly suppressed favorable evidence, we will produce evidence and we will beat them cold. That's all I have to say."

It is evident that the prosecutor meant his admission to be in the nature of a demurrer even though the statute does not authorize a demurrer to a motion for a new trial. It is clear from the police report, Mrs. Brandon's testimony at the trial, and her post-trial statement that Mrs. Brandon did not have a real opportunity to determine the appearance of the boy who assaulted her. In consideration of these facts, along with the defendant's failure to cross-examine Mrs. Brandon at the trial, we believe that the suppression of her alleged comment to the prosecutor, if there was such suppression, does not amount to concealment of evidence.

We have studied the other cases cited by the defendant, including the case of *Jackson v. Wainwright*, 390 F2d 288 (5th Cir 1968), which defendant stressed.

It is not in point. There, a man dragged a 13-year-old girl from a telephone booth, across the road, and, at the point of a knife, raped her. A Mrs. Elberty drove past the scene at the beginning of the struggle. She thought the man was an older brother or other relative, or that perhaps some teenagers were playing around. She did not think the assailant was a Negro, as was Jackson. Mrs. Elberty was able to identify the girl, but she told the prosecutor the assailant was not the defendant because the person she saw was too light-skinned to have been Jackson. In her one clear glimpse of his face she thought he was a white man. She did not take the witness stand at the trial. At the hearing on a motion for a new trial, Mrs. Elberty was called as a witness where her testimony was consistent with her earlier statements to the police and the prosecutor. The court held that the prosecution should have notified the defendant that Mrs. Elberty thought the man was white or light-skinned.

Here, Mrs. Brandon testified at the trial that she did not see the boy at the time her purse was taken, and that he was a Negro boy about 15 or 16 years old. But she also added that she did not know. Thus, during the trial the defendant as well as the state knew that Mrs. Brandon could not describe the purse snatcher. In *Jackson*, that knowledge was not obtained by defendant or his counsel until after the trial.

The only information in the record concerning the attempt by the defendant to see the police report on the Brandon matter is contained in the affidavit of defendant's counsel. That merely recites that defendant was informed (by some unidentified person) that there was no record of the Brandon purse-snatch. The defendant did not request that the prosecutor or the court produce the police report. We perceive nothing

in the police report of a nature which would require its voluntary disclosure by the prosecutor prior to or during the trial, at least in the absence of a request. The description contained in the police report is consistent with the description Mrs. Brandon gave on the witness stand. We conclude that there was no suppression by the state of any evidence which would have been material to the defense. The tidbits of information contained in the police report or locked in Mrs. Brandon's fragile memory would have made no contribution to due process. The motion for a new trial was properly denied.

■ Defendant has also appealed from an order denying his petition for an increased allowance of fees for an investigator. The defendant reqested payment of $3928.45 for expenses incurred in investigation on the defendant's behalf. A hearing was held in which the court examined an itemized account of the investigation. A total expenditure of $1250 was approved. ORS 135.330(3) provides:

"Upon completion of all services by the attorney or attorneys so appointed under ORS 135.320, the attorney or attorneys shall submit to the court an affidavit containing an accurate statement of all reasonable expenses of investigation and preparation paid or incurred, supported by appropriate receipts or vouchers. The court shall thereupon enter an order directing the county to pay to such attorney or attorneys the amount of the expenses, *or such portion thereof as may be approved by the court.*" (Emphasis supplied.)

The statute entrusts the determination of the amount allowable to the discretion of the trial court, and its decision will not be disturbed in the absence of abuse. No such abuse was shown.

Affirmed.