Argued December 18, 1973, affirmed January 21, reconsideration denied February 27, petition for review denied March 26, 1974

# CHARLES AUTRY WILLIAMS, *Appellant, v.* CUPP (No. 74404), *Respondent.*

518 P2d 181

*Gary D. Babcock,* Public Defender, Salem, argued the cause and filed the brief for appellant.

*Jim G. Russell,* Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Lee Johnson, Attorney General, and W. Michael Gillette, Solicitor General, Salem.

Before Schwab, Chief Judge, and Langtry and Thornton, Judges.

LANGTRY, J.

Petitioner was convicted of first degree murder. Former ORS 163.010 (1). Upon direct appeal to this court his conviction was affirmed. *State v. Williams,* 2 Or App 367, 468 P2d 909 (1970). Some of the facts relevant to this post-conviction proceeding are detailed in that opinion and need not be repeated here, because the matters raised in this proceeding are largely an outgrowth of the issue raised there. Petitioner here appeals from an order dismissing his petition for post-conviction relief, which order is based on findings of fact and conclusions of law made by the post-conviction court after an extensive hearing.

On the direct appeal the sole issue was whether a motion for new trial should have been allowed. The motion was based on the testimony of Wilbur Polk that two of the three key witnesses against petitioner, Raines and Reed, had concocted their testimony in Polk's presence while all three were lodged together in the Multnomah County jail at Rocky Butte. At that time Raines and Reed insisted that they had told the truth at petitioner's trial and that Polk was lying.

In this post-conviction proceeding Raines' and Reed's testimony has changed and they now say that Polk was telling the truth, i.e., they both confess to having lied at petitioner's murder trial.

■ Petitioner's first two causes of action relate to the assertions that his conviction was obtained by the perjurious testimony of Raines and Reed, that the prosecution induced this testimony by promises of leniency and favorable treatment, and that the prosecution knew or should have known that the testimony was perjury. After hearing the evidence presented at the post-conviction hearing and observing the demeanor of the witnesses, the court below concluded that Raines' and Reed's affidavits and testimony at the post-conviction hearing were not credible and not worthy of belief. The court rejected all of petitioner's contentions making up the first two causes of action. A review of the exhibits (including a transcript of the previous trial) and of the post-conviction transcript discloses that there was valid evidence to support the judge's findings of fact and thus they are binding upon this court. *Ball v. Gladden*, 250 Or 485, 443 P2d 621 (1968).

In his third cause of action, petitioner alleged that the prosecution had withheld information contained in three police reports that was favorable to him, and

.thus his conviction should be vacated, relying on our decision in *Hanson v. Cupp,* 5 Or App 312, 484 P2d 847 (1971). The post-conviction court rejected these contentions.

In *Hanson v. Cupp,* supra, we stated that the sole questions relevant in determining whether the failure to divulge information to the defense was a denial of due process were:

"(1) Did the state have such evidence?

"(2) Was it evidence of substantial significance for the defense—was it evidence which, if believed by a trier of fact, would be seriously considered by that trier of fact in determining guilt or innocence?" 5 Or App at 320.

There is no question that the state had some such evidence in three particulars which we will describe below; the only question is whether this evidence would have been of substantial significance for the defense.

■ (1). Reed testified at the murder trial that petitioner Williams had told him that he had committed the murder. At the time Reed first told this story to the police, he also told the police that Williams had told him that after the murder was committed he had gone to "Kemp's pad" at 10th and Jarrett to purchase heroin with the money taken from the victim. The police later learned from Kemp that he, Kemp, was not living at 10th and Jarrett at the time of the murder. This information was then corroborated by the police as being factually correct. Petitioner was not informed of this inconsistency in Reed's original statement to the police.

The existence of the factual inconsistency between the actual location of "Kemp's pad" and Reed's state-

ment to the police relating to where Williams had said he had gone after the murder does not arise to the level of substantial significance. Reed did not testify to this detail, and the prosecution had good reason for not bringing it out: (a) Williams' alleged activities after the murder are of dubious relevance, and (b) the purchase of heroin is a separate crime, evidence of which is highly objectionable. In addition, assuming that it would have been permissible for the defense to use this evidence to establish the inconsistency between fact and Reed's statement on this subject, proof of the inconsistency is only slightly relevant on the question of whether Williams had told Reed he had gone to "Kemp's pad" at that location. Reed only said that Williams said that, not that Williams was right.

■ (2). Raines testified that he had been driving around Portland in his automobile when Williams and one Talley flagged him down. They paid him $1 to take them to the scene of the crime, where they got out of the car and went into the victim's furniture store while Raines waited outside. They returned and Raines drove them to the corner of Union and Jarrett. Raines denied any knowledge of what Williams intended to do when he went into the store.

The murder occurred around 9:30 a.m. Wednesday, July 20, 1966. At 9:15 p.m., July 24, 1966, a police report indicates that one Eddie Collins had told detectives that on Thursday or Friday afternoon he had gotten into an argument with Raines in a pool hall and Raines had told him that if Collins did not watch out Raines would kill him just like he, Raines, had killed "the old man at the furniture store * * *." Collins went on to describe certain details of the crime, attributing

Raines as his source of information. Collins' statement about Raines was never revealed to the defense.

This failure would present a serious question if it were not for a stipulation made during the post-conviction hearing that both Raines and Collins would have denied the existence of this conversation if they had been questioned about it at Williams' murder trial. It was also stipulated that Collins would deny ever making such a statement to the police if he had been called as a witness at the post-conviction hearing. These stipulations were made together on the last day of the post-conviction trial, obviously for the purpose of saving the calling of witnesses whose evidence both sides were confident of.

The existence of the information contained in the police report would not have been admissible in petitioner's behalf under these circumstances. Raines if questioned about the statement would have denied it. Collins if called to impeach Raines on his denial would have also denied that Raines had made the statement. There the matter would have ended since Collins' credibility would only be collateral to the issue being tried.

■ (3). Dennis Smith testified that he had seen petitioner and Raines at the scene of the crime shortly before the murder was committed. Police reports indicate that when he was initially questioned by police he stated that he did not leave his home that day until 10:30 a.m., which time was after the crime was committed. This inconsistent statement was also not revealed by the police. But this was not a denial of due process. When Smith was being cross-examined during the murder trial he admitted that he had previously told the police that he did not know anything about the

murder. If the defense had had access to the statement Smith had made to the police when he told them he had no knowledge of the crime, they would not have been any better off than they were when Smith himself acknowledged the existence of such a statement on the stand. This evidence even if believed by the jury would not have changed the result of the trial.

None of the evidence that was withheld from the defense was of the sort that would indicate petitioner was innocent of the crime charged. In *Hanson v. Cupp*, supra, the evidence that was withheld if believed by the jury would have established Hanson's innocence. The distinction between the two situations indicates that the judgment below should be affirmed.

We are particularly impressed by and agree with one of the post-conviction court's findings of fact:

"* * * * *

"4. The state, by the length of the investigation, the number of people contacted, the development of evidence independent of and unconnected with Raines and Reed, and the use of polygraph examinations both before and after trial, exhibited care and caution to insure that the testimony of Raines and Reed were [sic] corroborated and factually correct.

"* * * * *."

Our review of the record leads us to conclude that such a finding is applicable to the entirety of the state's case.

Affirmed.