Submitted on briefs June 22, affirmed November 23, 1981

# STATE OF OREGON,
## *Respondent,*
### *v.*
# KERRY WILLIAM DISORBO,
## *Appellant.*

(No. 42895, CA 19022)

636 P2d 986

Gary D. Babcock, Public Defender and Marilyn C. McManus, Deputy Public Defender, Salem, filed the brief for appellant.

Dave Frohnmayer, Attorney General, William F. Gary, Solicitor General, and Rudolph S. Westerband, Assistant Attorney General, Salem, filed the brief for respondent.

Before Richardson, Presiding Judge, and Thornton and Van Hoomissen, Judges.

VAN HOOMISSEN, J.

## VAN HOOMISSEN, J.

Defendant appeals his jury convictions of rape and sodomy in the first degree, contending that (1) he was denied due process of law in violation of the Fourteenth Amendment because he was unable to present the testimony of an eyewitness who, the state acknowledges, would have given exculpatory testimony, and (2) the trial court erred in denying his motion for a new trial based on newly discovered evidence. We affirm.

The victim met defendant and "Jim Phillips" in a Eugene tavern. The three drank several glasses of beer together and played some pool. The victim agreed to accompany the men to Newport to attend a party. While enroute, the trio stopped at a farmhouse in the vicinity of Toledo, where they visited some acquaintances of Phillips. As they left the farmhouse, all three sat in the front seat of the car. Phillips was driving. After a few minutes, defendant told Phillips to stop the car. The victim testified that defendant then started poking her with a knife, tried to take her clothes off and threatened to kill her, and that after struggling she submitted to sexual relations with him. She testified she asked Phillips for help, but "he just sat there." Defendant then forced her to commit sodomy.

As they started to leave the area, their car stalled. By chance, Toledo Police Officer McLeod happened by and, seeing the stalled car, he stopped to offer assistance. The victim told McLeod that she just had been raped at knifepoint by the two men. A knife was later found in the back seat of the car. McLeod took defendant's identification. Phillips stated he had no identification, so McLeod took his name and birthdate. McLeod handcuffed Phillips and placed him in the rear seat of his police vehicle. The victim was placed in the front seat. McLeod heard the victim and Phillips talking. Phillips said he had not done anything wrong, and the victim said that, while she knew that, Phillips had not helped her. He replied that he would help the victim if he was not jailed. Defendant then ran off; however, McLeod apprehended him and placed him under arrest.

State Trooper Wolfe then arrived on the scene. Because it was determined that the alleged crimes had

been committed outside the city limits of Toledo, McLeod turned the matter over to Wolfe. At Wolfe's request, McLeod transported defendant to the county jail. Wolfe talked briefly with the victim, who told him that defendant had committed rape but that Phillips had not participated. Wolfe then transported the victim to the hospital.

Thereafter Wolfe took Phillips to the State Police Office in Newport, where he recorded Phillips' statement. Although he was under the influence of alcohol, Phillips was cooperative. He told Wolfe that the victim had voluntarily engaged in sexual relations with defendant. Wolfe asked Phillips for identification. Phillips said he had none, but he gave Wolfe a Springfield address and a local address. Phillips asked Wolfe to take him to the local address.

Wolfe testified that he had no reason to believe that Phillips had given him false identification or that Phillips would flee. Because Phillips had been arrested by McLeod, Wolfe decided to discuss Phillips' status with a superior officer. They determined that Phillips should be released immediately, because no charges were being made against him by the victim. Wolfe then drove Phillips to the local address where Phillips said he was staying, and Phillips went inside the house.

No photograph or fingerprints were taken by the police before Phillips was released. He was not booked into jail nor taken before a magistrate. He did not post bail or a security deposit. At the time Wolfe released Phillips, he was not aware of the statement of the victim to Officer McLeod that two men had raped her nor of the conversation between the victim and Phillips that he would help her only if he were not jailed.

After defendant was charged, attempts by both the prosecution and the defense to locate Phillips were unsuccessful. Law enforcement sources suggested that Phillips' true name might be James Henry Grady. This identification was later confirmed. Although the Lane County Sheriff's Department held two warrants for Phillips, his whereabouts remained unknown.

Prior to the trial defendant filed motions: (1) to produce favorable evidence, (2) to suppress all evidence and

(3) to dismiss. The motion to produce favorable evidence asked that the correct name and whereabouts of Phillips be disclosed by the state. The motion to suppress contended that the state had "destroyed" favorable evidence by releasing Phillips without first obtaining more information about him. The state contended that it had disclosed everything it knew about Phillips and that it had cooperated fully with the defense in attempting to locate him. The state also moved to quash defendant's motion to suppress on the ground that defendant had no standing to object to the release of Phillips. The trial court found that the prosecutor's office had made reasonable efforts to locate Phillips and that defendant had no standing to object to Phillips' release. The trial court made the following finding:

"That the State of Oregon did previously have a person known as Jim Phillips, also known as Jim Grady, in custody, but that the said Jim Phillips had been released and that the State of Oregon no longer knew the whereabouts of the said Jim Phillips; * * *."

The court thereupon denied all defendant's motions.[1]

■ The evidence does not support defendant's contention that the state suppressed, destroyed or misplaced evidence. The missing witness falsely identified himself and then absconded, leaving no evidence of his whereabouts in the possession of the state that the prosecutor refused to disclose. We have reviewed the cases cited by defendant, and they are not in point. The trial court did not err in denying defendant's pretrial motions.

Defendant next assigns as error the trial court's denial of his motion for a new trial based upon newly discovered evidence.[2] Defendant was convicted on June 18,

---

[1] Defendant did not move for a continuance. *See State v. Varney*, 244 Or 583, 419 P2d 430 (1966).

[2] ORCP 64B provides in part:

"A former judgment may be set aside and a new trial granted in an action where there has been a trial by jury on the motion of the party aggrieved for any of the following causes materially affecting the substantial rights of such party:

"* * * * *

"B.(4) Newly discovered evidence, material for the party making the application, which such party could not with reasonable diligence have discovered and produced at the trial.

1980. On August 8, 1980, defendant filed a motion for a new trial. In his affidavit defendant's attorney recited:

> "In late July, 1980, my client was transported to the Lane County Correctional Facility for trial [on a different charge]. I next spoke with my client on August 4, 1980. He told me at that time that he had seen the eyewitness, Grady, in the corrections facility.

> "On August 5, 1980, I called the records section of the Lane County Correctional Facility and was told that James Henry Grady was indeed, in custody there, and had been, since June 17, 1980. The trial of my client Mr. Disorbo, was June 17 and 18, 1980. At trial, I moved for a directed verdict of acquittal due to the unavailability of Mr. Grady.

> "That the defense has maintained throughout the pendency of this matter that it was impossible to present a proper defense without the testimony of the eyewitness. That it now has come to light that the eyewitness was in the custody of the State of Oregon at the time of trial and remains in the state's custody."

■ To warrant the granting of a motion for new trial, the newly discovered evidence must: (1) be such as will probably change the result if a new trial is granted; (2) have been discovered since the trial; (3) be such as could not have been discovered before the trial by the exercise of due diligence; (4) be material to the issue; (5) not be merely cumulative of former evidence; and (6) not be merely impeaching or contradictory of former evidence. *State v. Williams,* 2 Or App 367, 371, 468 P2d 909 (1970). If requirement (1) is satisfied, failure to satisfy requirements (4), (5) and (6) should not prevent the granting of a new trial. 2 Or App at 373. The motion is disfavored and is addressed to the sound discretion of the trial court. *Newbern v. Exley Produce Express,* 208 Or 622, 303 P2d 231 (1956); *State v. Rollf,* 40 Or App 535, 540, 595 P2d 1377 (1979); *State v. Fentress,* 35 Or App 63, 580 P2d 1044 (1978); *State v. Toth,* 30 Or App 285, 289, 566 P2d 1218 (1977).

The trial court denied defendant's motion for a new trial on the grounds that: (1) Phillips' testimony was not newly discovered evidence, (2) his testimony would not change the result of the trial, (3) he would not be a credible

witness, and (4) defendant had not exercised due diligence in attempting to locate him.[3]

∎   At the time of trial it was known that Phillips was a witness who. could be expected to testify in favor of defendant. Therefore, Phillips' testimony was not newly discovered evidence in the traditional sense. What was newly discovered was Phillips' *whereabouts.*

---

[3] The trial court stated:

"* * * * *

"I have considered the evidence and reviewed the law with respect to the Motion For a New Trial. I think that it is pretty clear that the question about newly discovered evidence which will justify a new trial must be such as will probably change the result if a new trial is granted, must also have been discovered since the trial, must be such as would not have discovered before the trial by the exercise of due diligence, must be material to the issue, must not be merely cummulative of former evidence, must not be merely impeaching or contradictory of former evidence. I have considered all of the matters that have been presented.

"I am going to deny the Motion For a New Trial. First, I feel that the application for new trial, which is based on newly discovered evidence, must be viewed with distrust and construed with great strictness as specified in *State v. Williams,* 2 Or App 367 at 370 and 371.

"I feel that the evidence would not probably change the result if a new trial were granted for several reasons: one, the question of veracity of the witness; two, certainly there is evidence that he has lied all the way through this not only to his identity, but in other matters as well. Even his statement on the tape that night he said he was asleep and later he changed or at least indicated that he said some things that were contrary to the fact that he was asleep, but he did say he was asleep. He also made reference to the knife that said the defendant was not using a knife, didn't take out a knife, yet there was a knife that was found in the back seat.

"I also find that this was not evidence that was discovered since the trial. The Defendant was aware of it prior to the trial, though the location of the witness may not have been known prior to the trial. I believe that while the defense did make an effort to locate the witness, as did the state, I believe that there could have been more done immediately prior to the trial to determine whether or not the witness had been located under the warrant that had been issued for him.

"I do find that the matters would be material to the issue, and that it would not be merely cummulative of former evidence. It was impeaching in the sense that it was impeaching — or the evidence would be impeaching or could be considered as impeaching the complaining witness, the victim in this matter; however, he was also present so it wouldn't be merely impeaching evidence.

"Considering all of the evidence, I feel that the motion for a new trial should be denied.

"* * * * *"

The trial judge found that Phillips would not be a credible witness and that there was little likelihood the outcome of the trial would be changed if Phillips testified at a new trial. *See State v. Kilpatrick,* 35 Or App 749, 582 P2d 480 (1978); *State v. Bolger,* 31 Or App 565, 569, 570 P2d 1018 (1977). *But see State v. Quiring,* 41 Or App 767, 598 P2d 1294 (1979) (trial to the court). The trial court expressly found Phillips repeatedly lied to the police. He also lied to defendant's investigator, who interviewed him on August 9, 1980. Phillips told the investigator that on April 24, 1980, two days after the rape, he was confined in Lane County Correctional Facility and had been so confined except for a one week period. However, on checking with Lane County, defendant's investigator discovered that Phillips had not been taken into custody and confined until June 17, 1980. Phillips had a prior record of convictions for larceny in 1974 and 1977. On June 23, 1980, he was convicted of burglary in the first degree in Lane County.

The trial court found defendant had not exercised due diligence in attempting to locate Phillips. Defendant is faced with a presumption that due diligence was not exercised. *State v. Bolger, supra,* 31 Or App at 569. Prior to trial, defendant knew warrants had been issued in Lane County for Phillip's arrest. Had defendant simply inquired of the Lane County authorities before presenting his case on June 18, 1980, he would have discovered the whereabouts of Phillips, because on that date Phillips was lodged in the Lane County Correctional Facility awaiting trial for burglary. Phillips was therefore actually available to the defense. No explanation was offered by defendant for failing to make this simple inquiry. Due diligence would require some final contact with the Lane County authorities or some showing that defendant was precluded for some reason from making such inquiry before presenting his case. *See State v. Fentress, supra.* There was no such showing in the present case.

This case closely parallels *State v. Williams, supra,* where the defendant was convicted of murder, based largely upon the testimony of two witnesses. After the jury had returned, the prosecution informed the court that one Polk, a prison inmate, had advised the prosecution that he and the state's two witnesses had conspired falsely to implicate

the defendant in the murder. At a post-trial hearing, Polk also swore that he had previously lied while under oath "maybe four times." 2 Or App at 369-70. On appeal, we said:

> "* * * However the testimony of Polk, when considered in its totality, merely says that the parties talked about blaming the Weinstein killing on the defendant. Besides, as previously mentioned, the testimony of the witness Polk was rendered almost incredible when he testified under oath that he had previously perjured himself in trial, in court four times." 2 Or App at 372.

In the present case, the trial court specifically found the testimony of Phillips would be incredible. We agree.

Defendant relies on *State v. Toth, supra.* There the defendant was charged with burning his automobile in order to recover insurance. The defense discovered two witnesses who would testify, if called, that they were with the defendant away from the crime scene when the crime occurred and that there was no way the defendant could have possibly committed the crime. 30 Or App at 288-89. One witness would also testify that he had seen loose electrical wire, had smelled a heavy odor of gasoline coming from the car and believed the gas was accidentally ignited. There was no question in *Toth* concerning the veracity of the newly discovered witnesses. In fact, the prosecution substantially conceded that issue by contending only that the prospective testimony would be cumulative. 30 Or App at 290.

The trial court is the finder of fact at the hearing on the motion. *State v. Quiring, supra.* In the present case, the court found there was little likelihood that the outcome of the trial would be changed if Phillips testified, that the prospective testimony of Phillips was incredible and that the whereabouts of Phillips could have been discovered before the defense presented its case-in-chief by the exercise of due diligence. Those findings are reasonable and amply supported by the evidence. The trial court did not abuse its discretion in denying defendant's motion.

Affirmed.