Argued September 22, 1970, re-argued January 18, reversed
and remanded February 11, 1971

STATE OF OREGON, *Respondent, v.* CHARLES
JUNIOR EMERY, *Appellant.*

480 P2d 445

528

*Allen L. Fallgren,* Portland, argued and reargued the cause and filed briefs for appellant.

*Jacob B. Tanzer,* Solicitor General, Salem, argued and reargued the cause for respondent. With him on the briefs was Lee Johnson, Attorney General, Salem.

FOLEY, J.

Defendant was convicted by a jury of rape upon his wife's daughter. Following a psychiatric examination of defendant, the trial court concluded that he was a sexual menace to society and pursuant to ORS 137.111 sentenced him to life imprisonment. He appeals.

Defendant lived with his wife and five children: their three sons and two girls from a prior marriage of the wife. The older of the wife's daughters was the victim. She was 12 years old at the time of the alleged attack. She testified that on or about July 8, 1968, in the evening while her mother was absent from the house, her stepfather sexually assaulted her. She did not report the incident to her mother, to the police or to any other adult until approximately four months later.

■ On November 6, 1968, having learned that her mother was planning to return to work as a night janitress, she ran away from home. She went to the home of her girl friend, one Alma Jean Barnes. At trial the girl friend's mother, Mrs. Billy Ann Barnes, testified that she asked the girl why she had left home. According to Mrs. Barnes the victim then reported the assault by her stepfather.

"She * * * started telling, you know, what had happened and she couldn't go home.

"Do I go into what she talked about?

"[DEFENSE COUNSEL]: I am going to say, at this time, Your Honor, I understand the law to be she can testify to a complaint, if there was a complaint, but not to the specific details. I would object to that as hearsay. * * *"①

---

① Whether or not prompt complaint was made by the victim is conceded to be relevant by both defendant and the state.

530

The court overruled the objection and Mrs. Barnes testified that the victim said

"\* \* \* that her step-dad had been playing around with her. I said, 'What do you mean?' She says, 'He has been feeling me out.' I said, 'What do you mean by that?' She says, 'Well, he took my bottoms off.' She says, 'He told that nasty word to me.'

"Well, my oldest boy and my daughter, both, had talked to her. And they were standing there telling me, 'That is true.' "

Defendant assigns as error the court's failure to exclude this testimony.

It is to be noted that there are three declarants mentioned by Mrs. Barnes in the hearsay statement: the victim, Mrs. Barnes's oldest boy and her daughter, the latter two allegedly affirming that the victim had told them the same thing.

■■ The challenged testimony clearly constitutes hearsay. "It is an out-of-court assertion being used in court to prove the truth of the matter asserted." *State v. Christensen*, 3 Or App 442, 474 P2d 782 (1970). The question then is whether the hearsay evidence given by Mrs. Barnes is admissible under any exception to the hearsay rule.

■ The state suggests, alternatively, as a basis for admission of this hearsay testimony the excited utterance exception to the hearsay rule, the state of mind exception, or the fact that declarant was available for cross-examination. An excited utterance is a spon-

---

Hearsay evidence is permissible for the limited purpose of establishing that a complaint was made but nothing more. State v. Sargent, 32 Or 110, 112, 49 P 889 (1897). See also, State v. Whitman, 72 Or 415, 416-17, 143 P 1121 (1914).

taneous declaration made in response to a startling event, affording declarant insufficient time to contrive a self-serving statement. *State v. Hutchison*, 222 Or 533, 353 P2d 1047, 83 ALR2d 1361 (1960). Here the "startling event" occurred four months before the declaration and obviously did not trigger the hearsay. The state cites no cases in support of its suggested application of the state of mind exception to the hearsay rule and we conclude that this exception has no relevance here. The state's third contention is that the admission of inadmissible hearsay testimony is not prejudicial error if declarant is available for cross-examination. Were this theory dispositive of the issue involved, it would be entitled to discussion. However, although one of the three declarants, the victim, was in court and did testify and was cross-examined, the other two declarants were not present in court and did not testify.

■ Even though the hearsay attributed to Mrs. Barnes's son and daughter was inadmissible, the question remains whether its admission was prejudicial error. Whether or not the evidence of guilt is strong and the improper evidence is merely corroborative are factors which must be considered in determining whether reversal is required. See *State v. McLean*, 255 Or 464, 468 P2d 521 (1970). Defendant denied the alleged assault and rape, initially and at the trial. He introduced alibi evidence through persons who worked with him to the effect that he was out of town, working in Salem, and did not come home until late in the evening during the period in question. Defendant's wife also testified that defendant had been working until 10:30 or 11:00 at night at or about the time of the attack. A gynecologist called as a witness by the state testified that, upon examination of the

victim just prior to trial, he found her to be a virgin with her hymen intact. The doctor also testified that penetration to approximately ½ inch would have been possible without rupturing the hymen. The victim testified to defendant's having made a series of improper preliminary advances toward her during the year preceding the alleged rape. Except for an indefinite report to her mother concerning one such incident made more than a year prior to the subject occurrence, she did not complain about these advances to her mother or any of the other occupants of the home, and did not mention the alleged rape to any adult person until some four months later when she talked to Mrs. Barnes. The victim stated she was afraid to tell her mother because she feared defendant would hurt her mother and herself.

The credibility of the victim was basic to the state's case. Any evidence which tended to corroborate her testimony was detrimental to defendant's case. Such was the inadmissible hearsay attributed to the son and daughter of Mrs. Barnes, who "were standing there telling me, 'That is true [that the victim thus detailed the facts of the assault].'" We cannot tell to what degree this testimony influenced the jury's verdict of guilty. We cannot, however, say that the error in admitting it was so unsubstantial that we can "affirmatively find * * * that there was 'little, if any, likelihood of [the evidence] having changed the result of the trial'," *State v. McLean*, supra, 255 Or at 479, and we must, therefore, reverse defendant's conviction.

Reversed and remanded.