Argued February 18, affirmed March 10, 1975

STATE OF OREGON, *Respondent, v.* DARLE
EUGENE WILSON (No. 74-1472), *Appellant.*

532 P2d 825

*Robert J. McCrea,* Eugene, argued the cause and filed the brief for appellant.

*Timothy Wood,* Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Lee Johnson, Attorney General, and W. Michael Gillette, Solicitor General, Salem.

Before SCHWAB, Chief Judge, and LANGTRY and LEE, Judges.

LANGTRY, J.

Defendant appeals from conviction of rape in the first degree (ORS 163.375(1)(c)), assigning as error the admission into evidence of a hearsay statement identifying him as his daughter's assailant.

The 14-year-old prosecutrix testified that she fled her father's mobile home, in the darkness of night, barefoot and clad in a bathrobe, at the earliest opportunity following the attack and shortly thereafter encountered "a man in a pickup" who notified the authorities upon being told "what had happened."

The man to whom prosecutrix had reported the rape was thereafter also called as a witness by the state. Having acknowledged his presence in the vicinity of the defendant's home during the early morning hours of March 13, he was asked whether anyone had approached or contacted him at that time. The following dialogue then ensued:

"A   Yes.

"Q   [MR. LUISI, PROSECUTOR:] And who was that?

"A   This was, I understand, [B—— W——], and she was coming from behind the tavern going north, kind of half walking, half running.

"And am I supposed to say now what she said?

"Q   Well, tell us what you first saw.

"A   Just a person coming at me in the dark.

"Q   And what was she doing? Was she walking or running?

"A   Well, a fast walk, I guess, you would say.

"Q   Did she make any motions to you or anything?

"A   I don't remember any motions other than the words.

"Q   And how was she dressed when you first saw her?

"A   In a kind of a light blue terry cloth bathrobe, no shoes, barefooted.

"Q   And what did she first say to you?

"MR. HONSOWETZ [DEFENSE COUNSEL]: I object to that. He can tell what he observed and stuff. I think it's hearsay. She can testify as to what she said.

"THE COURT: Overruled.

"You may answer, sir.

"THE WITNESS: Would you repeat the question, please?

"By Mr. Luisi:

"Q    What did she first say to you?

"A    'Help, help me, please. My father just raped me.' "

■ The victim's statement, as related by the witness, indisputably constituted an "*   *   * out-of-court assertion being used in court to prove the truth of the matter asserted," (*State v. Christensen,* 3 Or App 442, 445, 474 P2d 782 (1970)), and could therefore have properly been admitted into evidence only if falling within one of the recognized exceptions to the hearsay rule.

■ A well-established exception to the hearsay rule applicable to a prosecution for a sexual offense enables an individual to whom a prosecuting witness has made a complaint of sexual misconduct by another to testify to the fact of such a complaint. This exception is limited to evidence only of the making of the complaint, however, and does not immunize testimony relating the details of any such declaration. *State v. Yielding,* 238 Or 419, 395 P2d 172 (1964); and *State v. Waites,* 7 Or App 137, 490 P2d 188 (1971).

In *State v. Waites,* supra, we said:

"There is little guidance in the cases to determine exactly what constitutes permissible testimony that a complaint was made as distinguished from impermissible testimony as to the details of the complaint, other than the clearly established rule that the witness cannot state the identity of the alleged assailant. *See,* e.g., *State v. Whitman,* 72 Or 415, 143 P 1121 (1914). However, after reviewing the prior Oregon cases on this subject, we recently stated:

"'*   *   * Hearsay evidence is permissible

for the limited purpose of establishing that a complaint was made *but nothing more.* [Citations omitted.]' (Emphasis supplied.) *State v. Emery,* supra, 4 Or App at 530, n. 1.

Under the but-nothing-more standard stated in *Emery,* we conclude [the witness'] hearsay testimony as to the location of the assaults and as to the prior assaults over a two-year period was beyond the scope of the exception here discussed." (Footnote omitted.) (Second brackets ours.) 7 Or App at 141.

Thus, at bar, this exception was authority for the introduction of testimony by the witness to the effect that the victim had complained of being raped, but under it any further testimony repeating the identification of her assailant remained inadmissible.

However, the state also relies on a second exception. It argues that the out-of-court statement was properly admitted in its entirety under the res gestae[1] or "spontaneous exclamation" exception provided for in ORS 41.870.[2] The rationale behind this exception was considered by this court in *State v. DeLorme,* 9 Or App 245, 495 P2d 1208 (1972), and by the Supreme Court in *State v. Hutchinson,* 222 Or 533, 353 P2d 1047,

---

[1] "Commentators and, less frequently, courts, have criticized use of the phrase *res gestae.* Its vagueness and imprecision are, of course, apparent. * * * Historically, however, the phrase served its purpose well. Its very vagueness made it easier for courts to broaden it and thus provide for the admissibility of certain declarations in new fields. But it seems clear that the law has now reached a stage at which this desirable policy of widening admissibility will be best served by other means. The ancient phrase can well be jetisoned, with due acknowledgment that it has served well its era in the evolution of evidence law." (Footnotes omitted.) McCormick, Evidence 686, 687, § 288 (hornbook series, 2d ed 1972).

[2] "Where the declaration, act or omission forms part of a transaction which is itself the fact in dispute, or evidence of that fact, such declaration, act or omission is evidence as part of the transaction." ORS 41.870.

83 ALR2d 1361 (1960), and *State v. Kendrick,* 239 Or 512, 398 P2d 471 (1965), where the following were held to be requisites to the admission of any statement otherwise objectionable as hearsay under the exception:

> "* * * (1) [T]here must be some occurrence startling enough to produce nervous excitement and render the utterance spontaneous and unreflecting; (2) the utterance must be before there has been time to contrive and misrepresent and while reflective powers are yet in abeyance; (3) the utterance must relate to the circumstances of the startling occurrence preceding it. (See § 1750, Wigmore on Evidence, 3rd ed.)" 239 Or at 515-16.

Here, as in *Kendrick,* that the experience of the declarant was both unusual and startling is apparent; it is equally clear that the statement objected to had reference to the startling occurrence. The crucial question is thus whether the victim's statement repeated by the witness was made

> "* * * while the declarant was still under the influence of the event to the extent that [her] statement could not be the result of fabrication, intervening actions, or the exercise of choice or judgment * * *." *Johnston v. Ohls,* 76 Wash 2d 398, 406, 457 P2d 194 (1969).

■ The determination of whether a statement is of an impulsive or unreflective nature requires consideration of several factors among which the lapse of time between the exciting event and the particular utterance is generally regarded as of primary significance. There is a judicial reluctance to characterize statements as "spontaneous" as the length of time increases between the event and the utterance. Obviously, no inflexible rule gauged to that interval may be employed to determine whether any particular decla-

ration was or was not the product of reflective thought. Rather, each case will depend upon an examination of the facts peculiar to it, and should be resolved by the exercise of a judicial discretion which takes into account factors such as the condition of the victim at the time the statement was given, whether the statement was made in response to an inquiry by some other person, whether the declaration was made at the first opportunity subsequent to the alleged occurrence, and the age or mentality of the victim, in addition to the time element. *See Zeller v. Dahl,* 262 Or 515, 499 P2d 1316 (1972); *Bosin v. Oak Lodge San. Dist.,* 251 Or 554, 447 P2d 285 (1968); Annotation, 19 ALR2d 579 (1951).

Cases in which "spontaneous" statements, made within one to two hours following attacks, identifying both the attacks and the attackers, have been admitted as exceptions to the hearsay rule are: *Wheeler v. United States,* 211 F2d 19 (DC Cir 1953), *cert denied* 347 US 1019 (1954); *State v. Hutchinson,* supra; *State v. Randolph,* 99 Ariz 253, 408 P2d 397 (1965); *State v. McLain,* 74 Ariz 132, 245 P2d 278 (1952); and *Soto v. Territory,* 12 Ariz 36, 94 P 1104 (1908).

In *Keefe v. State,* 50 Ariz 293, 72 P2d 425 (1937), which is quoted at length by the Oregon Supreme Court in *State v. Kendrick,* supra, it was held that a lapse of about five days from the act to the repeated statement was too long. The child involved there was six years old. *Cf. State v. Waites,* supra; *State v. Emery,* 4 Or App 527, 480 P2d 445 (1971).

■ The following principle may be inferred from these decisions: Although the time interval between an exciting event and a subsequent statement may be

of a duration which would ordinarily give rise to reflective thought, where there is some evidence that the declarant did not in fact engage in any such reflection—e.g., a nervous, upset or distraught condition at the time of the statement together with a reasonable basis for continuing emotional upset—the statement will be admitted as a "spontaneous exclamation."[9] In other words, if there is evidence that an exciting event is an "on-going" one which has not terminated at the time of the statement, a not unreasonably long time lapse between the initiation of the event—the sexual attack itself—and the statement will not necessarily preclude admission of the evidence.

■ The testimony of the prosecutrix indicates that after being forcibly compelled to engage in sexual intercourse she fled from the mobile home in which she had been physically detained as soon as she believed flight was possible—approximately one to one-and-one-half hours later when her father appeared to have fallen asleep. She also testified that she thought she heard the defendant taking up pursuit as she began her flight, and that she ran first to a lighted but closed establishment nearby and then to an unoccupied service station where she hid while under the impression that her father was aware of her escape and was attempting to locate her. At the time the witness inadvertently came upon the scene, then, it is apparent that, despite the fact that the rape itself had taken place over an hour beforehand, the prosecutrix may reasonably have been expected to have been in an excited state caused by that act as well as intervening events. The witness' unequivocal testimony was that the victim appeared

---

[9] State v. DeLorme, 9 Or App 245, 495 P2d 1208 (1972); McCormick, Evidence 704, § 297 (hornbook series, 2d ed 1972).

very "upset * * * like something had happened * * *" at the time she told him of the assault.

These facts justify the admission of the out-of-court statement in its entirety as a spontaneous exclamation.

Affirmed.