Argued June 20, reversed and remanded August 8, reconsideration denied
September 12, petition for review denied October 17, 1978

STATE OF OREGON, *Respondent,*
*v.*
TIMOTHY ADAM FELTY, *Appellant.*
(No. 38157, CA 9693)
582 P2d 478

James E. Mountain, Jr., Deputy Public Defender, Salem, argued the cause for appellant. With him on the brief was Gary D. Babcock, Public Defender, Salem.

[ 735 ]

Thomas H. Denney, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were James A. Redden, Attorney General, and Walter L. Barrie, Solicitor General, Salem.

Before Schwab, Chief Judge, and Johnson, Gillette and Roberts, Judges.

GILLETTE, J.

## GILLETTE, J.

Defendant appeals his conviction after jury trial of Burglary in the First Degree, assigning as error (1) the trial court's allowance of certain impeachment testimony and (2) the trial court's giving of instruction on flight. We reverse.

Defendant was charged with being one of two perpetrators of a burglary of the Waldport Pharmacy on March 2, 1977. Eyewitnesses had observed one burglar (later identified as Rugh) in the building and frightened him away. A few minutes later, the same witnesses observed the burglar whom they had previously seen and a second man in an automobile. They gave the auto's license to the police, and the automobile was eventually stopped. It contained the defendant and Rugh.

After the state rested, the defendant called Rugh. Rugh testified that, at his request, the defendant drove him from Springfield to the coast on March 2. Rugh then said he left the defendant at a Waldport restaurant, participated in an unassisted burglary of the Waldport Pharmacy, put the items taken in a sleeping bag, put the bag in the trunk of the car and rejoined the defendant at the restaurant. Rugh said that he did not tell the defendant of the burglary until they were driving home from Waldport. He denied that the defendant had joined him in planning the burglary.

On cross-examination, Rugh said he was unsure of the details of the burglary. He said he did not believe he had driven the vehicle from the restaurant to the burglary scene, but assumed he had walked back from the pharmacy to the restaurant with pharmacy items. Also on cross-examination, Rugh was specifically asked, "Isn't it a fact that you told the police, Terry Silbau, of the Benton County Sheriff's office, that when you were stopped at this time when you were stopped by them that Felty is the one that left the lounge and not you?"

[ 737 ]

Rugh responded, "I'm not sure what I said. The whole thing is kind of blurry to me."

The state was then permitted, on rebuttal, to call Officer Silbau, who testified concerning a conversation he had with Rugh after the automobile in which defendant and Rugh had been riding was stopped. The officer was asked, "* * * did you have a discussion with the witness that just testified, Mr. Michael Rugh, about whether the defendant, Timothy Adam Felty, had left the lounge?"

"A:   Yes. There is sometime he sat by my patrol car, while we were waiting for the Lincoln County deputies to arrive that Mr. Rugh said to me he had been at Waldport at the Sea Squire Lounge and said that Mr. Felty had left the lounge. * * *

"* * * * *

"Q:   Did you have a discussion with Richard Michael Rugh about whether the defendant, Timothy Adam Felty, had left the Sea Squire Lounge?

"A:   Yes, I did.

"Q:   Would you relate to the jury what your discussions consisted of?

"A:   Well, we were seated in his [*sic*] patrol car waiting for the Lincoln County Deputy to arrive. We were talking and Mr. Rugh stated that he had been at the Sea Squire Lounge in Waldport. Mr. Rugh also stated that Mr. Felty had left the lounge for approximately half an hour. Mr. Rugh then went out to locate Felty, but was unable to do so and returned to the lounge. * * *"

In his first assignment of error, defendant attacks the above impeaching testimony as impermissible under the requirements of ORS 45.610:

"A witness may be impeached by evidence that he has made, at other times, statements inconsistent with his present testimony; but before this can be done, the statements must be related to him, with the circumstances of times, places and persons present, and he shall be asked whether he made these statements, and if so allowed to explain them * * *."

While not a model of cross-examination, we think it clear that the prosecutor's question to the witness fully

[ 738 ]

apprised the witness of the time, place and circumstances under which the witness was alleged to have made a statement, elicited what memory the witness had with respect to what that statement may have been, and therefore was proper foundation for the subsequent testimony of the officer with respect to the specific statement that the witness had made. *See Rigelman v. Gilligan,* 265 Or 109, 121, 506 P2d 710 (1973); *State v. Miller,* 35 Or App 207, 582 P2d 1378 (1978).

■ Defendant also assigns as error the trial court's giving of an instruction on flight. The court instructed the jury as follows:

> "The flight of the defendant, if any, after the commission of the crime, is not sufficient by itself to establish his guilt, but it is a fact which, if proven, may be considered by you in the light of all the other facts and circumstances in the case in deciding the question of the defendant's guilt. You may determine whether or not there was such flight, and if you find there was, then you may determine what the defendant's purpose or motive was which prompted him to so act. *Evidence of flight, if you find that there is such evidence in this case, may be considered by you as an indication of the defendant's awareness of guilt or his guilty intent.*"

We think the emphasized portion of the instruction was error. In *State v. McCormick,* 28 Or App 821, 561 P2d 665 (1977), *reversed on other grounds,* 280 Or 417, 571 P2d 499 (1977), we held that the giving of an instruction on flight was error because it was an impermissible comment on the evidence. We said,

> "We do not think the relevance of flight evidence is so obscure that an instruction by the court is necessary to inform the jury the inferences that can be drawn. Although the instruction is imbedded in Oregon jurisprudence we think the better rule is that such instruction should not be given with respect to the conduct of the defendant or of a witness." *State v. McCormick, supra,* 28 Or App at 827.

The Supreme Court, on review, while not fully agreeing with the prophylactic rule we had announced,

[ 739 ]

nonetheless stated, "We agree with the Court of Appeals that the debatable significance of flight can in most cases be left to argument by the parties, unless the trial court believes in a particular case that the issue should be clarified for the jury. * * *" *State v. McCormick, supra.*

Here, it would be extremely difficult to justify even the most innocuous version of a flight instruction, inasmuch as there was little, if any, evidence in the record to support such instruction. The only evidence even arguably constituting "flight" was the fact that the defendant and Rugh were stopped in an automobile which was driving away from Waldport. Even assuming, without deciding, that some instruction on flight could have been given, we think the one which was given in this case was an impermissible comment on the evidence in view of the fact that the court specifically advised the jury that, "evidence of flight, if you find that there is such evidence in this case, may be considered by you as an indication of the defendant's awareness of guilt or his guilty intent."

We find such a comment, which essentially directed the jury to draw a certain inference or, at the least, improperly focused the jury's attention on that inference, to be sufficiently significant to constitute the denial of a fair trial to defendant, and therefore to require reversal. *See State v. Green,* 30 Or App 1019, 1024-1026, 568 P2d 716 (1977), *S Ct rev allowed* (1978).

Reversed and remanded for new trial.