Submitted on record and briefs September 12, reversed and remanded for resentencing December 11, 1978, reconsideration denied January 23, petition for review denied April 17, 1979, 286 Or 149

STATE OF OREGON, *Respondent,*
*v.*
PHILLIP ALLEN LeBRUN, *Appellant.*
(Nos. 96269, 96268, CA 9612, 9510)
(Cases consolidated)
587 P2d 1044

Gary D. Babcock, Public Defender, Salem, filed the brief for appellant.

James A. Redden, Attorney General, Walter L. Barrie, Solicitor General, and Melinda L. Bruce, Assistant Attorney General, Salem, filed the brief for respondent.

Before Schwab, Chief Judge, and Thornton, Tanzer* and Buttler, Judges.

THORNTON, J.

*Tanzer, J., did not participate in this decision.

**THORNTON, J.**

Defendant and Arnold Eaton were each convicted of first degree rape and first degree sodomy upon the same victim. The facts set out in *State v. Eaton,* 31 Or App 653, 655, 571 P2d 173 (1977), are adequate for the purposes of discussing the five assignments of error raised here.

"The rape occurred on the evening of July 14, 1976. The victim, while walking home, accepted a ride from two men in a sports car. After purchasing three quarts of beer and procuring some pills, the men drove the victim to an abandoned hotel in Scotts Mills where they forced her to submit to sexual intercourse and sodomy. Thereafter they threatened harm to her and members of her family if she did not meet them at 3 p.m. the next afternoon. She agreed to do so, and the men then drove her to her home in Portland.

"The next day, the victim reported the incident to the police. At 3 p.m. she went with police officers to the appointed meeting place. A short time later defendant and a companion arrived at the scene in a white Ford automobile. Upon seeing the victim in the company of the police, they fled. After a ten-block automobile chase, and a short pursuit on foot, defendant and his companion were apprehended. The men were positively identified by the victim, both at the time of their arrest and at trial. * * *"

At trial, Officer Walliker, one of the arresting officers, testified that he gave defendant his *Miranda*[1] rights, and that defendant expressed a willingness to discuss the crime under investigation. Defendant, according to the officer's testimony,

"* * * denied he told Mr. Eaton to run. I asked him if he recognized the girl. He said no; that in fact he and Mr. Eaton had been together the entire night before. That they did not have any girl with them; that they did not rape any girl. At this time he stated that he didn't wish to talk to me any further and he was subsequently transported to the Multnomah County jail for booking."

---

[1] *Miranda v. Arizona,* 384 US 436, 86 S Ct 1602, 16 L Ed 2d 694, 10 ALR3d 974 (1966).

Defendant's first assignment of error is that the trial court erred in denying his motion for mistrial based upon the officer's testimony of defendant's assertion of his right to remain silent. The applicable law is expressed in *State v. Smallwood,* 277 Or 503, 505-06, 561 P2d 600, *cert den* 434 US 849 (1977):

> "There is no doubt that it is usually reversible error to admit evidence of the exercise by a defendant of the rights which the constitution gives him if it is done in a context whereupon inferences prejudicial to the defendant are likely to be drawn by the jury. [Footnote omitted.] * * *"

■■ Assuming arguendo that the officer should not have been permitted to testify as to defendant's unwillingness to discuss the matter further, the important inquiry, of course, is the prejudice likely to flow from the officer's testimony. Given the overwhelming evidence of guilt, we are convinced beyond a reasonable doubt that the result of the trial would not have been different without the challenged answer. *Chapman v. California,* 386 US 18, 87 S Ct 824, 17 L Ed 2d 705 (1967); *State v. Van Hooser,* 266 Or 19, 511 P2d 359 (1973); *State v. Nulph,* 31 Or App 1155, 572 P2d 642 (1977), *rev den* 282 Or 189 (1978). Several factors lead us to this conclusion, many of which were detailed in *State v. Eaton, supra.* Although *Eaton* did not involve claimed constitutional error, we believe that our decision there is helpful in considering defendant's objection urged here. There we held that the court erred in allowing the state to present evidence that defendant possessed forged identification. We affirmed the conviction, despite the error, in the following language:

> "Here, the evidence of defendant's guilt was compelling. The positive identification by the complaining witness, the presence of defendant's palm print on a bottle found near the scene of the crime, and defendant's flight when he returned and saw the police, all allow us to conclude with reasonable certainty that the verdict was not affected by the admission of the improper

[ 414 ]

evidence. We therefore hold that the error was harmless." 31 Or App at 658.

We would add, in the instant case, that the building the complaining witness identified as the scene of the crime belonged to defendant; the complaining witness bore several vaginal tears inconsistent with consensual sexual intercourse; in the opinion of a licensed polygraph examiner who gave defendant a polygraph examination, defendant gave deceptive answers to all relevant questions concerning the crime (admitted in evidence pursuant to stipulation). And finally, not only were defendant's fingerprints on a bottle found near the scene of the crime, but the complaining witness's fingerprints were on the same bottle. The officer's recollection of defendant's comments following his arrest was particularly relevant to rebut the defense of consent. The statements are separable, and the court should not have allowed the officer to testify to defendant's exercise of his right to remain silent, *State v. Nulph, supra.* On the other hand defendant's contention that he had not been with any girl was inconsistent with the position he took at trial, was admissible, and adds to the compelling nature of the other evidence. In summary, the totality of the incriminating evidence leads us to conclude that the error in denying defendant's motion for mistrial was harmless beyond a reasonable doubt.

■ Defendant's second assignment of error addresses the testimony of Barbara McCallum, a "Rape Victim Advocate" with the district attorney's office, to the effect that upon examination the victim's emotional state comported with "what most of the women [sexual abuse victims] that come to the hospital are reacting like, even from age twelve." It is defendant's contention that Ms. McCallum "was not qualified by reason of skill, knowledge or experience to aid the jury" regarding the matter upon which she testified. Whether a witness possesses sufficient skill, knowledge or experience to qualify as an expert as to any particular matter rests primarily in the trial court's

discretion. *State v. Smith,* 228 Or 340, 345, 364 P2d 786 (1961).

Defendant does not articulate any grounds which would demonstrate an abuse of discretion. In fact, Ms. McCallum testified that she had been employed as a rape victim advocate for almost one year, and in that capacity had observed over 100 reported rape victims. Prior to her employment with the district attorney's office, she received her Master's Degree in social work and had worked in a Children's Services Division Shelter Care Unit for sexually and physically abused children and adolescents.

■ Defendant's third assignment is that the court erred in giving an instruction which would allow the jury to find defendant guilty of the charged offenses if it found he aided or abetted the commission of those offenses. Defendant contends that because the indictment accused him of perpetrating the criminal acts, he could not be found guilty as an accomplice, or as an aider and abettor. Both our Supreme Court and this court have previously rejected such a claim, based on former ORS 161.220. *State v. Glenn,* 233 Or 566, 379 P2d 550 (1963); *State v. Capitan,* 8 Or App 582, 596, 494 P2d 443, *rev den* (1972). Although ORS 161.220 was repealed in 1971 as part of the revision of the Criminal Code,[2] ORS 161.150 and 161.155, defining criminal liability, lead us to the same conclusion.[3]

_____

[2] Oregon Laws 1971, ch 743, § 432.

[3] ORS 161.150 provides:

"A person is guilty of a crime if it is committed by his own conduct or by the conduct of another person for which he is criminally liable, or both."

ORS 161.155 provides:

"A person is criminally liable for the conduct of another person constituting a crime if:

"* * * * *

"(2) With the intent to promote or facilitate the commission of the crime he:

"* * * * *

"(b) Aids or abets or agrees or attempts to aid or abet such other person in planning or committing the crime * * *

"* * * * *."

■■ Defendant's fourth assignment of error concerns the giving of a flight instruction. This court has had several occasions to review flight instructions, and the Supreme Court has additionally indicated its opinion. *See, e.g., State v. McCormick,* 28 Or App 821, 561 P2d 665, *rev'd on other grounds* 280 Or 417, 571 P2d 499 (1977); *State v. Nulph,* 31 Or App 1155, 572 P2d 642 (1977), *rev den* 282 Or 189 (1978); *State v. Felty,* 35 Or App 735, 582 P2d 478 (1978). In this case, however, defendant did not raise any of the difficult issues discussed in those cases. Prior to the giving of instructions, defendant's counsel objected to the flight instruction on the ground that there was no evidence of flight from the crime, only flight from apprehension, and as to that issue there could be several explanations:

"Number 26, I'll ask the Court to consider that—that I'm unprepared to completely respond on the issue of flight. I think the flight instruction has usually applied to several distinct situations. I think such as evidence of leaving the scene of the crime and leaving the jurisdiction and I'm not so sure that the flight, if we want to characterize that, that occurred in Portland, as a flight from this crime. I mean, in other words, what I'm getting at is this is a later—this is a later time and this flight could be for some other reason. It could have been outstanding warrants for them. It could have been all sorts of reasons for the flight if you want to characterize it as that, what happened in Portland.

"And I'm not prepared to tell the Court what my position is on that flight. I would probably need until Tuesday to do that, because I don't know how—I don't know what the limits are on flight, I guess is what I'm telling the court."

Of course flight from apprehension is the crucial concept; defendant need not be chased from the crime. *Cf., State v. Stookey,* 253 Or 367, 454 P2d 267 (1969); *State v. McIntire,* 2 Or App 429, 468 P2d 536, *rev den* (1970). Without approving of the instruction, we note the evidence is sufficient to meet defendant's objections.

In *State v. Kiser,* 31 Or App 29, 32-33, 569 P2d 681 (1977), *rev den* 281 Or 1 (1978), we addressed a similar objection to a flight instruction on sufficiency grounds:

> "* * * This ground is refuted by the evidence since we find that there was sufficient evidence to support a flight instruction, putting aside for the moment the issue on which *McCormick* was decided."

As to the additional inferences which could be drawn from the evidence of flight, defendant did not move for additional instructions which would have set forth those inferences. Without such a request, the court could not be expected to cure the one-sided instruction. *Cf., State v. Greene,* 30 Or App 1019, 568 P2d 716 (1977), *rev allowed* 281 Or 99 (1978).

■ When trial resumed on Tuesday, after a long weekend, counsel indicated, "we are not withdrawing our objection to flight—to the flight instruction. I'm not just—not submitting any particular matters on it." And, when asked by the court, "do you have any specific [objection] to the wording of the particular instruction on flight requested by the State, or is it a general objection to giving of any instruction with regard to flight?," counsel responded, "[i]t's a general objection." Defendant did not raise the issue of whether the instruction was an impermissible comment on the evidence, and, accordingly, the failure of the trial court to pass upon that question was not error. ORS 17.510 and 136.330(2); *State v. Kiser, supra.*

■ Defendant's final assignment of error contends that the court should not have imposed a minimum sentence in this case inasmuch as the facts arose prior to the effective date of the minimum sentence statute, ORS 144.110. The state concedes error in light of *State v. Bussey,* 34 Or App 535, 579 P2d 264 (1978).

Reversed and remanded for resentencing.