Argued and submitted April 23, affirmed August 4,
reconsideration denied September 16,
petition for review allowed October 12, 1982 (293 Or 653)

# STATE OF OREGON,
## *Respondent,*
### *v.*
# LAWRENCE E. MIDDLETON,
## *Appellant.*

### (No. 80-12-511, CA A21064)

648 P2d 1296

David E. Groom, Deputy Public Defender, Salem, argued the cause for appellant. With him on the brief was Gary D. Babcock, Public Defender, Salem.

Stephen F. Peifer, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Dave Frohnmayer, Attorney General, and William F. Gary, Solicitor General, Salem.

Before Gillette, Presiding Judge, and Warden and Young, Judges.

GILLETTE, P. J.

## GILLETTE, P. J.

Defendant was convicted of the first degree rape of his 14-year old daughter. He appeals, assigning as error the admission of certain testimony and the denial of his motion for a new trial on the basis of newly discovered evidence. We affirm.

Defendant was divorced and had custody of his four children, including the victim. On December 23, 1980, the victim told a friend at school that she had been raped that morning by her father. She then told the friend's mother, who reported the incident to the Children's Services Division (CSD) and took the victim to a hospital for an examination. The doctor found evidence of vigorous sexual intercourse and diagnosed rape within the past 24 hours. The victim recounted the details of the rape to a county juvenile counselor and a police officer. Defendant was arrested, and the children were removed from the home. The victim was placed in foster care. She testified before a grand jury on December 30 or 31, 1980; defendant was indicted.

On February 6, 1981, the victim wrote a statement, witnessed by her mother and two other persons, stating that she had lied about the rape and had made up the story because she wanted to be out on her own and thought that, by saying she was raped by her father, she would be able to leave home. She stated that she was influenced by her half-sister and others who pushed her into making statements that were not true. Other testimony offered at trial indicated that she had told several persons that she had lied about the rape and had told still others that she was going to say that there had been no rape because she did not want her father to go to prison. Her testimony at trial, however, was consistent with the original reports of rape made in December.

During the trial, four witnesses were allowed to testify that the victim had told them that she had been raped by her father. Two of the witnessses were allowed to give detailed accounts of the incident as related to them by the victim. In addition, a county juvenile counselor and a CSD social worker were allowed to testify that, in their

dealings with her, the victim acted similarly to other children who had been sexually abused by family members.

After defendant was convicted, the victim contacted a Portland newsperson. She made a video-taped statement in which she stated that she had lied when she said that her father had raped her. Defendant moved for a new trial, submitting the video tape in support of that motion. The trial court viewed the tape, ruled that the evidence was cumulative of evidence already introduced at trial and denied the motion.

Defendant first assigns error to the admission of the testimony of the witnesses who were allowed to recount the report of the rape made to them by the victim. The testimony allowed was beyond the scope of the specific exception to the hearsay rule for sexual assaults:

"* * *[A] person to whom a complaint of sexual misconduct is made by the prosecuting witness can testify that a complaint was made, but cannot testify as to the details of the complaint." *State v. Waites,* 7 Or App 137, 140, 490 P2d 188 (1971).

*See State v. Hackett,* 49 Or App 857, 621 P2d 609 (1980); *State v. Yielding,* 238 Or 419, 395 P2d 172 (1964).[1] Its admissibility—if any—must therefore be found in some other evidentiary rule.[2]

■ The trial court allowed the testimony as a prior consistent statement admissible to rehabilitate the prosecuting witness after she had been impeached by her written statement retracting the claim of rape.[3] Prior consistent statements are admissible in certain circumstances:

---

[1] ORE 803(18a) codifies this exception to the hearsay rule. It was enacted effective January 1, 1982, and therefore was not applicable to the trial of this case. It does not appear, however, to change the rule as it has been applied.

[2] The specific exception to the hearsay rule for the report of a sexual assault is not the only hearsay exception available in the trial of such a crime. In *State v. Wilson,* 20 Or App 553, 532 P2d 825 (1975), we allowed testimony concerning an out-of-court statement made by the victim of a sexual assault even though it went beyond the fact of an assault. We held in that case that the statement came under the "spontaneous exclamation" exception to the hearsay rule. *See also State v. Yielding, supra; State v. Baker,* 46 Or App 79, 610 P2d 840 (1980).

[3] The trial court also admitted the testimony of one witness as reporting an excited utterance or spontaneous exclamation. The state has abandoned that theory on appeal.

"Ordinarily a witness's out-of-court statements are not competent evidence to corroborate his in-court testimony. However, where the witness's credibility has been attacked on the ground that his testimony is a recent fabrication or that he has some motive for testifying falsely, evidence that he made consistent statements when the motive did not exist is admissible." *State v. Clark,* 26 Or App 55, 57, 551 P2d 1313, *rev den* (1976).

*See also State v. Drew,* 8 Or App 471, 475, 494 P2d 270, *rev den* (1972); McCormick, Evidence 102-107, § 49 (2d ed Cleary 1972).

In *State v. Clark, supra,* the court allowed the admission of testimony concerning the victim's report of a sexual assault after the defendant had impeached the victim by suggesting a motive to fabricate the story of the assault. In *Clark,* the defendant's theory was that his stepdaughter invented the assault, because she resented the fact that he had remarried and that she was required to spend time caring for her half-brother. We held that testimony concerning reports of sexual contact between the defendant and his stepdaughter had before the suggested motive for fabrication was admissible on the issue of the credibility of the complaining witness.

In this case, part of defendant's theory was that his daughter invented the story of the rape because she wanted to get away from home and live nearer her boyfriend. This theory is not the same as that in *Clark.* Here, the victim's suggested motive—getting away from her father—arose prior to *any* of her reports. The challenged evidence was not "* * * evidence that [she] made consistent statements when the motive did not exist." If defendant's theory on impeachment had been limited to this approach, the trial court's ruling would have been error.

Defendant, however, had a second theory of impeachment. He attempted to show that the victim's testimony at trial was the result of pressure by her sister, her attorney and the CSD social worker to go back to her original story of being raped. Against *this* theory, the victim's statements—which were made prior to the time any such "pressure" could have been exerted—were admissible as prior consistent statements. *State v. Clark, supra.* The trial court did not err.

■ Defendant's second assignment of error concerns the testimony of a county juvenile counselor and a CSD social worker, both of whom were asked to compare the behavior of defendant with that of other sexually abused children. Defendant does not contend the witnesses are not experts; rather he contends that their testimony invaded the province of the jury.

■ The county juvenile counselor, called as a witness for the prosecution, testified that she interviewed the victim. She described the way the victim acted during that interview and then testified as follows:

"Q. And have you interviewed other children who have reported that they have been abused sexually by a family member?

"A. Yes.

"Q. How do — what is the typical response upon initially speaking with you, a juvenile court worker, in terms of; their demeanor, holding their hands and —

"* * * * *

"A. I found her behavior very much in keeping with children who have complained of sex molestation at home."

The CSD worker was called by defendant and was questioned about the victim's behavior between the time the rape was reported and the time of trial. She indicated that the victim had run away from foster care and had skipped school. She was also questioned about whether the victim had wanted to retract her claim that she had been raped. On cross-examination she testified as follows:

"Q. Are you familiar with behavior of children who have reported this type of claim?

"A. Absolutely.

"* * * * *

"Q. Now, Mrs. Lindemann, regarding the behavior of the child, * * * of running away from two foster homes, can you characterize that testimony or that behavior * * * in terms of other sexually abused children?

"A. Yes, that is very characteristic. What happens with children is that they get very anxious and are guilt-ridden. They carry the responsibility. When we talk about

sex victims, we are really talking about victims, and children really assume so much of the guilt and so much of the responsibility for what has happened, that one of the ways that teenage kids and kind of impulsive kids handle that kind of thing is simply to run away. That is a very common kind of thing for a child to do.

"Q. Now, what about retracting reports before a Grand Jury or made to police? What about that?

"A. That is also a very common kind of thing to happen. When a child does do that, again because of the guilt, that they felt the responsibility, they realize this is my father or my stepfather or whatever, this is my parent and I still care for this person. And look what I'm doing to them. And look what I'm doing to my family. And the easiest thing to do, of course, is to say gee, I just made it all up and it isn't true after all. I think that kids would like that to actually be true. They wish it were true, that it hadn't happened.

"Q. Is any of the behavior that you have learned of [the victim], in supervising her case, different than other sexually abused children?

"A. No, it's not different at all, it's very typical for a teenage sex abuse victim."

The Supreme Court has recently stated that

"* * * The test [of the admissibility of expert testimony] is not whether a jury is capable of drawing its own inferences from the evidence presented. Rather, the test is whether the expert's testimony, if believed, will be of help or assistance to the jury." *State v. Stringer,* 292 Or 388, 391, 639 P2d 1264 (1982).

*See also Koch v. Southern Pacific Co.,* 266 Or 335, 513 P2d 770 (1973). It is clear, however, that not even an expert is entitled to testify as to the veracity of another witness. Such testimony would invade the province of the jury. *See State v. Walgraeve,* 243 Or 328, 333, 412 P2d 23, 413 P2d 609 (1966). The question thus becomes whether the evidence constitute such an impermissible invasion of the jury's function?

Such precedent as there is does not provide clear guideposts. In *State v. LeBrun,* 37 Or App 411, 587 P2d 1044 (1978), *rev den* 286 Or 149 (1979), we upheld the admission of testimony of a "Rape Victim Advocate" that

"the victim's emotional state comported with 'what most of the women [sexual abuse victims] that come to the hospital are reacting like, even from age twelve.'" 37 Or App at 415. The issue in that case, however, was apparently only the qualification of the Rape Victim Advocate to give such testimony. That issue is not raised in this case.

The issue presented in *State v. Harwood,* 45 Or App 931, 609 P2d 1312, *rev den* 289 Or 337 (1980), was closer to that presented here, although the testimony was somewhat different. In *Harwood,* we said:

> "A Children's Services Division caseworker with substantial experience working with sexually abused children was permitted to testify that it was not uncommon for children, as complainant here testified, to perceive and remember that the sexual acts had occurred during sleep. Defendant does not challenge the witness' qualifications as an expert witness but contends that this testimony amounts to expert comment on the evidence aimed at bolstering complainant's credibility.

> "Expert evidence relating to a witness' credibility is admissible if it goes to the ability of the witness to perceive, remember or relate. *State v. Longoria,* 17 Or App 1, 20-21, 520 p2d 912, *rev den* (1974). Psychiatric evidence calling into question the complainant's personality or veracity is, however, an invasion of the jury's function. *State v. Walgraeve, [supra].*

> "We believe the evidence here was proper. The average juror would not have experience dealing with sexually abused children and may believe accounts of this nature questionable. The evidence was that it is not uncommon for abused children to *perceive* and *remember* sexual encounters in this manner. The testimony was helpful to the jury and is admissible." (Footnotes omitted; emphasis in original.) 45 Or App at 939-40.

Obviously, the evidence challenged here bore some relationship to the question of the victim's credibility; any evidence from any source tending to support or refute her story would have. On balance, however, we find no error in admitting the testimony. Both witnesses—admitted experts—were explaining superficially bizarre behavior by identifying its emotional antecedents. Even if this had a tendency to reinforce the victim's veracity, we think that

evidence was as admissible as would be a doctor's testimony in a personal injury case that a party's physical behavior was consistent with a claimed soft tissue injury, although such an injury was not objectively verifiable. As in *Harwood,* this expert evidence could be helpful to the trier of fact and admissible.

■ ■    Finally, defendant assigns as error the denial of his motion for a new trial based on a video tape recording of the victim in which she stated that she had not been raped, that she had made up the story because she wanted to get away from home and that she had testified at trial because she was pressured to do so. Motions for a new trial are directed to the discretion of the trial court and that court's decision will only be reversed for abuse of discretion. *State v. Disorbo,* 54 Or App 877, 636 P2d 986 (1981); *State v. Rollf,* 40 Or App 535, 595 P2d 1377 (1979).

"Newly discovered evidence which will justify a new trial:

"(1)   must be such as will probably change the result if a new trial is granted;

"(2)   must have been discovered since the trial;

"(3)   must be such as could not have been discovered before the trial by the exercise of due diligence;

"(4)   must be material to the issue;

"(5)   must not be merely cumulative of former evidence;

"(6)   must not be merely impeaching or contradicting of former evidence." *State v. Williams,* 2 Or App 367, 371, 468 P2d 909 (1970).

*See State v. Disorbo, supra.* The trial court here found that the evidence presented on the tape was cumulative of that which had been presented at trial. The defendant admits that such a characterization of the evidence on the tape is not inaccurate. Defendant contends, however, that the impact of seeing the witness retract her story on the video tape would affect the jury's verdict.

As the trial court indicated, the jury already had before it the fact that the victim had retracted her story for basically the same reasons stated on the video tape. After

viewing the tape, we cannot say that the trial court abused its discretion in denying defendant's motion for a new trial.

Affirmed.

**YOUNG, J.,** dissenting.

I disagree with the resolution of defendant's second assignment of error. The majority has held that the county juvenile counselor and the Childrens' Services Division social worker may express their expert opinions that the witness-victim exhibited those qualities of behavior that makes her worthy of belief. The majority concludes that the witnesses "were explaining superficially bizarre behavior by identifying its emotional antecedents." Whatever else that may mean, it means in the context of this case that an expert witness may give an opinion concerning the credibility of a witness. Credibility is not a subject for expert testimony.

In *State v. Walgraeve,* 243 Or 328, 331, 412 P2d 23, 413 P2d 609 (1966), quoting from *Ballard v. Superior Court,* 44 Cal Rptr 291 (1965), the court stated:

> " '* * * We are also concerned with the invasion of the jury's province to evaluate the credibility of the witness by subjecting the witness' testimony to attack by expert opinion based on an interview conducted outside the presence of the jury; the prospect of a parade of experts with conflicting opinions confusing rather than enlightening the jury; the delay of and detraction from the trial of the guilt or innocence of the accused by an excursion into the mental state of the witness; and the reluctance to report such crimes which the proposed rule would instill in the timid or those unwilling to bare their souls to the world. In any event such a fundamental change in policy should come from the Legislature which has the investigative machinery to fully evaluate the proposal, specify its limits and its mode of operation. The trial court properly denied the petitioner's request in this respect.' "

The door is now open to permit an expert or other "skilled" witness to testify that it is typical behavior for a witness, a victim or a criminal defendant to tell the truth the first time and then later to recant. The question of the expert will be: "In your experience, is it typical behavior of

one accused of a crime to change his story?" or "not to tell the truth?"

The majority relies on *State v. Harwood,* 45 Or App 931, 609 P2d 1312, *rev den* 289 Or 337 (1980). If *Harwood* is authority for the proposition that a witness' testimony can be rehabilitated by expert opinion going to credibility, then *Harwood* is wrong and should be overruled.

I respectfully dissent.