**Affirmed by unpublished
memorandum
April 5, 1984
(9th Cir.)**

UNITED STATES DISTRICT COURT
FOR THE
NORTHERN MARIANA ISLANDS

APPELLATE DIVISION

COMMONWEALTH OF THE NORTHERN
MARIANA ISLANDS,

    Plaintiff-Appellee,

  vs.

JOSE TAISACAN WABOL,

    Defendant-Appellant.

D.C. CRIMINAL CASE 81-0021

D. C. APPEAL No. 82-9010

O P I N I O N

Before: DUENAS and ENRIGHT, District Judges and MOORE*

DUENAS, District Judge:

   This is an appeal from a jury verdict entered April 1, 1982, in the Trial Division of the District Court for the Northern Mariana Islands (Criminal Action No. 81-0021) finding Defendant-Appellant Jose Taisacan Wabol guilty of Kidnapping, Attempted Rape, and Assault and Battery. The Defendant was acquitted of the charge of Indecent Liberties with a child. On May 14, 1982, the Defendant-Appellant was sentenced to two ten-year terms with eight years of such sentence suspended and one six-month prison term, said sentences running concurrently.

---

*Honorable Robert E. Moore, Commonwealth Trial Court Associate Judge, sitting by designation pursuant to 48 U.S.C. § 1694b.

## STATEMENT OF FACTS

The facts as set forth by the Government and contradicted by the Defendant are as follows:

The charges against the Defendant arose out of an incident which occurred on December 25, 1981, at Saipan, Northern Mariana Islands. At approximately 8:00 o'clock that morning; the victim, Alicia K. Rabauliman ("Alicia"), testified that she left her home in Chalan Laulau on foot to go to San Jose Catholic Church to participate in the "liliko Nino" (the taking of Baby Jesus from house to house). Alicia's home is situated at 2-W Highway, Chalan Laulau area. In order for Alicia to go to San Jose Church she had to walk in a southerly direction on 2-W Highway past the defendant's home. The clothing worn by Alicia that morning consisted of a blouse and Levi's pants.

Shortly after Alicia passed the home of the Defendant, a white pick-up truck pulled up behind her. When Alicia turned around, she saw that the Defendant was the driver and sole occupant of the vehicle. Alicia has known the Defendant and his family her entire life.

When the car pulled up behind her, Defendant asked Alicia where she was going. Alicia told him that she was on her way to the San Jose Church to participate in the "liliko Nino". This testimony was contradicted by Dr. Long's testimony that Alicia was greeted by Defendant-Appellant while she was following Baby Jesus. The Defendant offered her a ride to the church and she accepted it.

785

After Alicia got into the Defendant's car, the Defendant continued driving in a southerly direction on 2-W Highway until they reached the monument. The monument is situated at an intersection that connects the 2-W Highway and the road to Dr. Torres Hospital. When the Defendant reached the monument, he executed a right turn. At this time, the car was traveling west toward Microl Corporation. The next brief stop was at the stop sign located in front of Microl Corporation. The San Jose Church is situated on the left-hand side when traveling from the monument to Microl Corporation. The Defendant drove past the three possible routes to the church. At that time, Alicia repeatedly asked the Defendant why he did not drop her off. Initially, the Defendant did not respond. He finally told Alicia to shut her mouth or else he would beat her. Alicia testified that she became afraid of the Defendant at that time.

At the stop sign in front of Microl Corporation, the Defendant executed another right turn and continued driving in a northerly direction on Beach Road. Alicia remembered passing Hafa Dai Hotel, Garapan Supermarket, and the movie theater in Garapan. Alicia also remembered passing the dump site in Puerto Rico and then Charlie Dock.

Shortly after passing Charlie Dock, the Defendant veered the car to the left and entered the Lower Base area. This testimony is contradicted by the fact that Alicia told Detective Kapileo that the incident had taken place at Garapan Beach. During the drive from Microl Corporation to Charlie

Dock, Alicia was slapped on the face and was forced to drink beer by the Defendant. When the Defendant parked the car, Alicia remembered that the front portion of the car was facing the ocean and that the ocean was not very far from them.

Immediately after Defendant parked the car at a beach in Lower Base, Alicia tried to open the lock of the passenger door. The Defendant prevented her from doing so, slapped her on the face and threatened to beat her if she ran away. Then Defendant got out of the car, opened Alicia's door, grabbed Alicia by the hair, and pulled her out of the car. The Defendant dragged Alicia to a nearby bush and pushed her to the ground. The Defendant attempted to unzip Alicia's Levi's pants. During the first few minutes Alicia struggled and the Defendant finally kicked her on the right side of her body. When Alicia could no longer resist, the Defendant unzipped her pants and pulled her pants and underwear down to her knees. Shortly thereafter, Alicia lost consciousness. When Alicia regained consciousness, she found herself under a tree at Garapan Beach immediately south of the Seaside Tavern. This testimony is contradicted by her own following testimony;

1) She testifies that she woke up at Lower Base in Tanapag and walked along Beach Road all the way to a place near Benavente's Store in Garapan.

///
///

2) She testifies she told Detective Kapileo that she woke up in Lower Base in Tanapag and walked to Garapan, but that she began walking on the beach rather than on the road.

3) She testifies that she both walked from Lower Base to Garapan and that she did not walk.

4) She testifies that Defendant-Appellant drove her to Garapan after the rape attempt.

5) She explains that she does not know the difference between truth and untruth.

When Alicia awoke, she felt pain all over her body; particularly in her vaginal area. She also discovered that her underwear was missing. She got up and started walking down the road in Garapan in a southerly direction where she met Elaine P. Kileleman, Arnold F. Rabauliman and Julie Peters. She was then transported to Dr. Torres Hospital in a police vehicle driven by Edward Pua. At the hospital, she was interviewed and examined by a physician.

The Prosecution called six witnesses to corroborate the testimony of the victim. The Prosecution then rested its case. The Defense failed to make a motion for a directed verdict of acquittal. The Defense called three witnesses. One such witness was Assistant Attorney General, Rexford C. Kosack, who had been directly involved in the prosecution of this case.

///
///

The Prosecution attempted to preclude him from testifying but was unable to do so. Mr. Kosack was permitted to testify as to what Rape Trauma Syndrome is and its effect on rape victims.

## ISSUES PRESENTED

1. Did the trial court prejudicially err in allowing Assistant Attorney General Rexford Kosack to testify as an expert witness on the emotional and mental state of rape victims?

2. Did the trial court prejudicially err in failing to give a cautionary instruction to the jury that the charges made against the Defendant are easy to make but difficult to prove?

3. Is there sufficient evidence to support the Defendant's conviction?

### I.

The first issue raised on appeal by Defendant-Appellant is that the trial court committed prejudicial error by allowing Assistant Attorney General Rexford Kosack to testify as an expert witness on the emotional and mental state of rape victims.

Mr. Kosack was called by the defense to testify in order to expose to the jury that the victim had made prior inconsistent statements. Upon cross-examination by Assistant Attorney General Castro, Mr. Kosack said that he felt the victim was suffering from "Rape Trauma Syndrome". Mr. Kosack then began a narrative of what Rape Trauma Syndrome is and its effect on rape victims. The Defense counsel objected that the

answer was narrative and the questioning was beyond the scope of direct examination. Such objections were overruled.

In addressing whether the trial court committed prejudicial error in permitting Kosack to testify as an expert witness we must remember that such determination is within the sound discretion of the trial court and will not be overturned by an Appellate Court unless there is an abuse of discretion. **State v. LeBrun**, 37 Or. App. 411, 587 P.2d 1044, 1047 (Ct. App. Or., 1978). We do not believe that there has been an abuse of discretion in this case. The Defense called Kosack as a witness and even elicited during the course of direct and redirect examination the extent of Kosack's knowledge, experience and expertise in the area of rape and sexual assault cases. Kosack further testified on cross-examination that he had prosecuted over 100 sexual assault cases and had been a supervisor for a unit of attorneys who handled sexual assault cases. It must further be noted that the defense did not object to the qualification of Kosack as an expert witness on the emotional and mental state of rape victims.

We now turn to the Defendant's contention that the trial court committed prejudicial error in allowing Kosack to testify concerning Rape Trauma Syndrome. The Defendant argues that such testimony invaded the province of the jury since the result of his testimony swayed the jury to overlook the victim's inconsistent testimony.

///

790

Kosack testified that in his opinion many rape victims suffer a loss of memory because of stress and that Rape Trauma Syndrome effects a woman so she is no longer aware of what is really happening to her and that victims will attempt to fabricate the answers to questions when they no longer remember what occurred.

It is well-settled that the test of admissibility of expert testimony "is not whether a jury is capable of drawing its own inferences from the evidence presented. Rather, the test is whether the expert's testimony, if believed, will be of help or assistance to the jury." State v. Middleton, 58 Or. App. 447, 648 P.2d 1296, 1300 (Ct. App., 1982), aff'd on review at 657 P.2d 1215 (Or., 1983), quoting State v. Stringer, 292 Or. 388, 391, 639 P.2d 1264 (Or., 1982).

In State v. Middleton, supra, the Defendant was convicted of first degree rape of his fourteen-year-old daughter. The court held admissible the expert testimony of a county juvenile counselor and a Children's Services Division social worker, both of whom compared the behavior of the victim with that of other sexually-abused children. The court noted that although the challenged testimony bore some relationship to the victim's credibility it was nevertheless admissible since it could be helpful to the trier of fact. The court analogized the expert's testimony to that of a "doctor's testimony in a personal injury case that a party's physical behavior was consistent with a claimed soft tissue injury, although such

791

an injury was not objectively verifiable." **Middleton**, **supra** at 1300.

In the case at bar, we are convinced that Kosack's testimony was helpful to the jury since the average layman would not have experience dealing with rape victims, especially children, and may question accounts of this nature.

The Defendant, in support of his contention, cites the case of **State v. Saldana**, 324 N.W. 2d 227 (Minn., 1982) in which the court reversed the conviction for rape where the issue was consent, because of improperly admitted testimony concerning "rape trauma syndrome". In **Saldana, Id.**, the expert witness, a counselor for sexual assault victims, described "rape trauma syndrome", testified whether the witness fit the description of the typical victim, and gave an opinion that the victim had been raped. The court in **Saldana, Id.**, at 231, however, noted that this type of testimony could be admitted in "unusual cases" such as where there has been a sexual assault on a child. This court is of the opinion that the case before it fits into the "unusual case" category since the victim was only 15 years of age at the time of the trial.

Based on the foregoing, it is our opinion that the trial judge committed no error in allowing Kosack to testify as an expert witness on the subject of Rape Trauma Syndrome.

Even if it was error to admit such testimony, we do not feel that it was prejudicial error warranting a reversal of the Defendant's conviction since we are of the firm belief

792

that even without Kosack's testimony the jury would have found the Defendant guilty beyond a reasonable doubt.

## II.

The next issue raised by Defendant-Appellant on appeal is that the trial court committed reversible error by failing to give the jury a cautionary instruction. The Defendant-Appellant argues that the jury should have been instructed that the charge is easily made but difficult to prove and, therefore, the jury should exercise care in examining the testimony of the complaining witness.

Both the Defendant-Appellant and the Government recognize that this instruction is no longer mandatory. People v. Rincon-Pineda, 14 Cal. 3d. 864, 123 Cal. Rptr. 119, 538 P.2d. 247, 262 (Cal., 1975) (In Bank). In People v. Rincon-Pineda, Id, the pre-1975 requirement that the cautionary instruction had to be given sua sponte in sex offense cases in California was overturned. The court noted that the 300-year-old legal concept had worn out its usefulness and was no longer mandatory.

The Defendant-Appellant argues, however, that the cautionary instruction should have been given in this case since [he alleges] the victim's testimony was totally inconsistent and at times incoherent and there was no corroboration of the victim's testimony. We do not agree. The trial court did not err in failing to give the cautionary instruction. It was sufficient to reaffirm and reinforce the general jury instruction dealing with the credibility of a witness, which it did.

III.

The Defendant-Appellant's final contention on appeal is that the evidence is insufficient to sustain the Defendant's conviction due to the victim's[1] inconsistent testimony and the lack of corroborating evidence.

The Defendant-Appellant points out the following variations of the victim's testimony:

First, the victim testified that Defendant-Appellant drove her to Lower Base, Tanapag, and made the attempt to rape her near the beach with the exact location never specifically identified.

Then, the victim admits telling the police that the Defendant drove her to an area near Benavente's Store in Garapan and made the attempt there.

The Defendant-Appellant then lists the different locations the victim stated she woke up after being "knocked unconscious" during the attempted rape:

1) She woke up in Garapan under a tree near Seaside Tavern.

2) She woke up at Lower Base in Tanapag and walked along Beach Road all the way to a place near Benavente's Store in Garapan.

3) She woke up in Lower Base in Tanapag and began to walk on the beach to Garapan (not on the road).

4) She testifies that she both walked from Lower Base to Garapan and that she did not walk.

5) She testifies that the Defendant drove her to Garapan after the rape attempt.

The question now becomes whether the victim's inconsistent testimony can be considered insufficient to uphold the Defendant's conviction. The following test governs the challenge of sufficiency of evidence on appeal:

> "For the Appellant to prevail on a challenge of insufficiency of the evidence, it must appear that after viewing the evidence and the inferences to be made from that evidence in the light most favorable to the verdict, reasonable minds could not believe him to be guilty beyond a reasonable doubt."
> State v. Middelstadt, 579 P.2d 908, 910 (Utah, 1978).

The Defendant-Appellant argues that this court must overturn the Defendant's conviction since the victim's inconsistent testimony lacked corroboration and was so improbable that it was completely unbelievable. We do not agree. It is true that the testimony of the witness is conflicting in some respects but it was consistent as to what happened and the actions of the Defendant during the attempt. Furthermore, the victim's testimony is corroborated by the testimony of witnesses who saw the victim immediately before and after the incident, by the testimony of the physician who interviewed, examined and treated the victim at 3:00 p.m. that same afternoon, and by the testimony of a prison mate of the Defendant.

///

795

We, therefore, determine that the testimony of the victim, together with the corroborating evidence, is sufficient to sustain the Defendant-Appellant's conviction.

The Defendant also challenges the competency of the victim to testify. It must initially be noted that the Defendant-Appellant raises this issue for the first time on appeal. Not only did the Defendant-Appellant fail to object to the competency of the victim at the time she took the oath, but he objected to the Government's line of questioning when it attempted to lay a foundation regarding the victim's competency. We are of the opinion that the trial court did not abuse its discretion in allowing the victim to testify and we refuse to address this issue for the first time on appeal. **State v. Manlove**, 79 N.M. 189, 441 P.2d 229, 232 (Ct. App., 1968).

On the basis of the foregoing, the judgment of the Trial Division of the District Court for the Northern Mariana Islands is affirmed.

CRISTOBAL C. DUENAS, District Judge

WILLIAM B. ENRIGHT, District Judge

ROBERT E. MOORE, Designated Judge

1/ The victim is Carolinian. Her first language is Carolinian; her second is Chamorro; and her third is English. The use of an interpreter was required throughout the duration of the trial.